2 P.3d 948 (2000)
2000 Utah Ct. App. 143
STATE of Utah, in the Interest of E.R., a person under eighteen years of age.
State of Utah, Division of Child and Family Services, Appellant,
v.
N.R., Appellee.
No. 981713-CA.
Court of Appeals of Utah.
May 11, 2000.
*949 Jan Graham, Attorney General and John Peterson, Attorney General's Office, Salt Lake City, for Appellant.
Justin Gary Jensen, Crippen & Cline LC, Salt Lake City, for Appellee.
Martha Pierce and Tracy S. Mills, Salt Lake City, Guardians Ad Litem.
Before Judges JACKSON, BILLINGS, and ORME.

OPINION
ORME, Judge:
¶ 1 This appeal arises from an action filed by the State against N.R. for alleged abuse of his eleven-year-old daughter. Prior to trial, counsel for N.R. sent the State and the Guardian Ad Litem requests for admissions to which they never responded. The juvenile court deemed the requests admitted in accordance with Rule 36(a), Utah Rules of Civil Procedure, and entered judgment in the father's favor on the strength of the State's and Guardian Ad Litem's "admissions." The State appeals. With some trepidation, we affirm.

BACKGROUND
¶ 2 E.R. is the child of N.R., her father, and E.A., her mother, who apparently were never married. E.R. was born in 1987 and lived with her mother until December 3, 1997, when she was taken into protective custody from her mother's home. The State took action after the mother failed to pick E.R. up from school. E.R. was then placed in the temporary custody of the Division of Child and Family Services (DCFS) and was adjudged by the juvenile court a dependent and neglected child.
¶ 3 In January 1998, the father was awarded custody of E.R. Three months later, during a conversation with a DCFS caseworker, E.R. disclosed that her father had hit her with a shoe for failing to take a shower and for not eating well. E.R. was once again taken into protective custody by DCFS.
¶ 4 On May 1, 1998, the State filed a verified petition alleging that E.R. had been neglected and abused by her father. Twenty days later, counsel for the father filed interrogatories, requests for production of documents, and requests for admissions. A certificate of service showed that a copy had been mailed to the Attorney General's Office and the Office of the Guardian Ad Litem.
*950 The father requested that the State and Guardian Ad Litem admit three things:
1. Please admit all injuries to the child, as alleged herein, were not inflicted by the natural father.
2. Please admit that the natural father has neither neglected or abused said child.
3. Please admit that the child is dependent.
No response was submitted by the State or Guardian Ad Litem. On July 9, 1998, the day before trial, the father filed a motion asking the court to deem those matters admitted.
¶ 5 On the morning of trial, the father's motion was heard. The State and the Guardian Ad Litem explained that neither had received the father's requests for admissions and knew nothing about the requests until receiving the motion to enter the admissions the previous afternoon. The juvenile court found:
1) While neither the Assistant Attorney General nor the Guardian ad Litem personally received the Requests for admission sent by [the father's counsel], the mailing certificate indicated that [the] discovery request was sent on May 20, 1998.
2) The State and Guardian ad Litem (GAL), failed to respond to the Requests for Admissions, within the time allowed by Rule 36, Utah Rules of Civil Procedure.

Because the requests for admissions were properly served, see Utah R. Civ. P. 5(b)(1), and were neither objected to nor denied, the father's requests were deemed admitted. The juvenile court also concluded that the admissions were conclusive on the issue of the father's alleged abuse and no additional evidence would be required from the parties. The court then held that E.R., who had made it known that she would refuse to return home, was dependent and was to remain in State custody,[1] but that the father had not been shown to have abused or neglected E.R.

ISSUES AND STANDARD OF REVIEW
¶ 6 We are asked to decide whether the trial court misapplied Rule 36(a) in deeming the requests admitted. "The proper interpretation of a rule of procedure is a question of law, and we review the trial court's decision for correctness." Ostler v. Buhler, 1999 UT 99, ¶ 5, 989 P.2d 1073. If we conclude the court's interpretation of the rule was correct, we are asked to consider whether the trial court abused its discretion by refusing to permit withdrawal of the admissions under Rule 36(b), given the overriding concern about the child's best interest.
¶ 7 When a party moves to amend or withdraw admissions under Rule 36(b), we review the trial court's decision for an abuse of discretion, specifically recognizing that the trial court's discretion is not unlimited. See Langeland v. Monarch Motors, Inc., 952 P.2d 1058, 1060-61 (Utah 1998).
[O]ur review of [a 36(b)] decision is not a typical review for "abuse of discretion." Instead, we review these decisions in two steps, using ... a "conditional" discretionary standard.... [F]irst ... we review the trial court's determination as to whether amendment or withdrawal would serve the presentation of the merits and whether amendment or withdrawal would result in prejudice to the nonmoving party. [Only then do] we review the trial court's discretion.... [B]ecause the rule does not give the trial court discretion to disregard the preliminary conditions of rule 36(b), its judgment as to whether those conditions have been satisfied is subject to a somewhat more exacting standard of review.
Id.

ANALYSIS
¶ 8 The State argues that the trial court erred, as a matter of law, in deeming the matters admitted because the court should not have faulted the State for failing to respond to requests for admissions the State never received. Had the trial court in *951 fact found that the State had never been served with the requests, the State's argument would be correct. However, the State reads too much into the trial court's findings of fact in this regard.
¶ 9 Taken as a whole, the import of the court's findings is that while the responsible attorneys never received the requests, the requests were served upon their respective offices, which was enough to trigger the responsibility to respond within 30 days. This construction of the court's finding is evident in the language, with our emphasis, that "neither the Assistant Attorney General nor the Guardian ad Litem personally" received the requests. This is also consistent with the remainder of the court's findings, namely, that the requests were in fact mailed on May 20, 1998, as indicated by the certificate of service, and the State and Guardian Ad Litem "failed" in never responding to the requests.[2] Apparently, the requests were lost or misplaced after service, as a result of some internal routing problem. This is not a valid excuse. See City of Muncie v. Peters, 709 N.E.2d 50, 54 (Ind.Ct.App.1999) (deeming requests admitted after served at counsel's office, although requests never actually crossed counsel's desk and he remained completely unaware of their existence until opposing party moved to have them admitted); Agristor Credit Corp. v. Donahoe, 568 S.W.2d 422, 425-26 (Tex.Civ.App.1978) (requests deemed admitted although attorney's secretary, who received requests, did not notify party's attorney, who never actually knew of requests).
¶ 10 The State next argues that in light of the need to protect the best interests of the child, the trial court abused its discretion first by deeming the requested admissions admitted and then by refusing to permit withdrawal of the admissions. When requests for admissions are properly served, and no written answer or objection has been submitted, the result is automaticthe requests for admissions, as a matter of law, are deemed admitted by simple operation of the rule. See Jensen v. Pioneer Dodge Ctr., Inc., 702 P.2d 98, 100-01 (Utah 1985); United States v. 2204 Barbara Lane, 960 F.2d 126, 129 (11th Cir.1992); Hughes v. Bobich, 875 P.2d 749, 755 (Alaska 1994); W.H. Shipman, Ltd. v. Hawaiian Holiday Macadamia Nut Co., 8 Haw.App. 354, 802 P.2d 1203, 1209 (1990); Peters, 709 N.E.2d at 54. See also 4A Moore's Federal Practice ¶ 36.05[4] n. 6 (2d ed.1985) (discussing federal rule).
¶ 11 Rule 36 provides, in pertinent part, as follows:
A party may serve upon any other party a written request for the admission, for purpose of the pending action only, of the truth of any matters ... that relate to statements or opinions of fact or of the application of law to fact....
Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter[.]
Utah R. Civ. P. 36(a)(1) & (2) (emphasis added). The rule does not say the court may admit the matterit says "[t]he matter is admitted." Utah R. Civ. P. 36(a)(2) (emphasis added). By simple operation of Rule 36(a), parties who ignore requests for admissions do so at their peril. Nor does the rule make special provision for cases involving children, although the State has requested we place such a gloss on it.
¶ 12 Indeed, in some contexts we have employed a more flexible standard when cases involve the best interests of children, *952 because a child's best interest is an inherently compelling basis for forgoing formality when, for example, counsel's blunders would lead to a premature dismissal before the merits are presented. See Wright v. Wright, 941 P.2d 646, 651-52 (Utah Ct.App.1997). Procedural exceptions have been recognized in a variety of circumstances when the central issue involving the best interest of the child is blocked by "court-made rules and doctrines [imposed] in furtherance of judicial efficiency and equity." In re R.N.J., 908 P.2d 345, 350 (Utah Ct.App.1995). See In re E.M., 922 P.2d 1282, 1284 (Utah Ct.App. 1996) (finality of judgment for purpose of appeal); In re J.P., 921 P.2d 1012, 1016-17 (Utah Ct.App.1996) (review of denial of Rule 59 motion), cert. denied, 931 P.2d 146 (Utah 1997); In re R.N.J., 908 P.2d at 350 (failure to argue plain error or exceptional circumstances); In re J.L.W., 900 P.2d 543, 549 (Utah Ct.App.1995) (estoppel); Larson v. Larson, 888 P.2d 719, 722 n. 2 (Utah Ct.App. 1994) (res judicata); In re J.J.T., 877 P.2d 161, 164 (Utah Ct.App.1994) (res judicata). While juvenile procedure need not be subject to every "hyper-technical" application of the law, In re J.J.T., 877 P.2d at 163, it does not follow that the State is automatically exempt from the plain language of Rule 36(a).
¶ 13 We conclude the trial court in this case correctly implemented the mandate of Rule 36(a) by ruling that the requested matters were admitted by operation of law. The potential harshness of automatic admission is mitigatedand the need for the blanket exemption sought by the State completely undercutby the escape hatch provided in Rule 36(b), which allows a trial court to withdraw or amend an admission "if the merits of the underlying action will be advanced by such withdrawal and if the party requesting the admissions fails to convince the court that it will be prejudiced by such withdrawal." Brunetti v. Mascaro, 854 P.2d 555, 558 (Utah Ct.App.1993). See Utah R. Civ. P. 36(b); Hughes, 875 P.2d at 755. As explained above, the trial court's decision not to override the admissions is reviewed under a somewhat more exacting abuse of discretion standard. See Langeland, 952 P.2d at 1060-61.
¶ 14 In this case, we must first decide whether the State actually requested that the admissions be withdrawn. The State claims it moved for withdrawal below, but in fact it only objected to the matters being deemed admitted when the question came before the court on the father's motion.
¶ 15 In Brunetti, we recognized that fully briefed opposition to a motion for summary judgment was, in substance, a motion to withdraw the admission in issue there. See 854 P.2d at 558. In so holding, we found that the motion "clearly outlined the parties' respective positions." Id. Other jurisdictions have employed this same liberal approach, allowing such things as the late filing of responses to requests for admissions to also be treated as requests for withdrawal. See Hawaiian Holiday, 802 P.2d at 1209. While it is unnecessary to be overly formal in considering whether a Rule 36(b) motion to withdraw admissions has been made, typically the action taken must be more or less commensurate with a motion to withdraw. Courts should consider all the circumstances involved.[3]
¶ 16 In this case, it is significant that the State's attorney did not learn of the requests until the eleventh hour. Moreover, the State's strenuous opposition to having the requests deemed admitted at all is not inconsistent with the position that if they are to be deemed admitted by operation of the rule, discretionary withdrawal should nonetheless be permitted under the rule. However, we need not definitively decide whether the State's opposition was commensurate with a motion to withdraw in this case because, even assuming it was, we see no reversible error in the trial court's decision to let the admissions stand.
¶ 17 Applying the standard of Rule 36(b) to this case, withdrawal of the admissions would surely "serve the presentation of the *953 merits." Langeland, 952 P.2d at 1061. The best interests of the child and the facts and circumstances surrounding the child's current status are also properly considered in determining whether or not to permit withdrawal of the admissions. Indeed, in any child abuse or neglect case when children will be returned to a potentially dangerous environment, the merits of the underlying action will always be advanced by withdrawal of admissions that would otherwise end-run the ultimate question of whether the children were abused or neglected.
¶ 18 Rule 36 additionally requires focus on whether "withdrawal ... will prejudice [the party who obtained the admission] in maintaining his action or defense on the merits." Utah R. Civ. P. 36(b). In this case, the trial court reasonably concluded that the father would in fact be prejudiced by such a withdrawal. The trial court stated that
the reason for the rule is to allow a party defining all the issues ... the benefit of relying on the fact that admissions have been made that haven't been responded to in 30 days so that they can prepare their case accordingly. And [the father] has relied upon that and now comes to Court... assuming that these admissions have been made[.]
The father was prejudiced and not in a position to go forward to trial as scheduled "because," as the trial court explained, "of his reliance upon the rules and the process ... to try to narrow the issues and avoid the necessity of calling people ... who he doesn't need to call."
¶ 19 This finding of prejudice, and consequent refusal to permit withdrawal of the admissions, was not an abuse of the trial court's discretion. See Brunetti, 854 P.2d at 558. The facts and circumstances in this case include a concession by the father that the child would not return to his home regardless of whether he was found to have abused the child.[4] As a result, the admissions do not directly jeopardize a proper determination of the child's best interests, as the resulting outcome is not the child's return to a potentially dangerous environment.
¶ 20 In a different abuse or neglect case, the outcome could well be different. If the upshot of refusing to withdraw admissions were to return a child to an abusive environment, no doubt we would conclude the trial court had exceeded the sound exercise of discretion. Cf. Wright, 941 P.2d at 651-52 (holding trial court action which changed child's custody to other parent on purely procedural ground, without adjudication on merits, was improper). We have no hesitancy in saying so. In such a scenario, there are other ways to encourage compliance with discovery obligations without jeopardizing a child's health or safety. But in the instant case, we cannot say discretion was abused when the trial court refused to withdraw the admissions. The line drawn by the trial court on the particular facts of this case adequately balanced the child's best interests, including that she would remain in a safe environment, with the father's right to rely on the admissions to which he was procedurally entitled.
¶ 21 The State also contends that the type of admissions requested by the father were plainly objectionable, and the trial court erred in even considering them. Specifically, the father requested that the State admit he had not inflicted the injuries on the child, that he neither neglected nor abused the child, and that the child is dependent. The State's objection to these requests is well-taken, albeit untimely. "Admit you lose" type requests, or requests to admit legal conclusions, are objectionable and not a proper basis for admission. See Jensen v. Pioneer Dodge Ctr., Inc., 702 P.2d 98, 100 (Utah 1985). However, when a party fails to object to the request on this ground, the party nonetheless "should be held to have admitted the matter." Id. at 100-01. The *954 time to object to the scope of the request is during the thirty-day window provided for in Rule 36(a)not for the first time on appeal. Therefore, we reject the State's argument.
¶ 22 Finally, the State argues that the strict time frames involved in child removal and abuse cases make it difficult, if not impossible, to comply with the rules of discovery, see Utah Code Ann. § 78-3a-308(2) (Supp.1999) (action must be commenced within 60 days of shelter hearing), and that, in fact, some rules cannot be complied with at all. See Utah Code Jud. Admin. R4-502(5) (requiring all discovery to be completed 30 days before trial). While we are sympathetic, the time frames relating to discovery can be adjusted for "cause shown," "as the court may allow," or "within the discretion of the court." Utah R. Civ. P. 30(b)(3), 36(a); Utah Code Jud. Admin. R4-502(5).[5] Moving for such relief in appropriate cases is a better approach to meeting the State's concern than a blanket invalidation of the usual discovery rules in child protection cases.

CONCLUSION
¶ 23 Contrary to the State's contention, the trial court found that the State had been served with the requests for admission and was responsible for not responding. Moreover, the trial court did not err in deeming the father's requests admitted, by simple operation of Rule 36(a). Assuming the State adequately moved to withdraw the admissions, the trial court did not abuse its discretion in this case in denying withdrawal, given that the father would have been prejudiced by withdrawal and that refusing withdrawal would not have led to return of the child to the father. We emphasize, however, that courts must consider the best interests of the child when deciding whether to permit withdrawal of admissions, and our review of the trial court's decision will consider any result that returns a child to a potentially dangerous environment, without an actual adjudication on the merits, to be an abuse of discretion.
¶ 24 Affirmed.
¶ 25 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.
NOTES
[1] The father was willing to stipulate to the dependency of the child and argued such a finding would, in fact, serve the child's best interest.
[2] Moreover, while not mentioned in the findings, the record suggests that the trial court and defense counsel had previous experience with the same trial attorney for the State failing to respond to requests for admissions, citing transfer of offices as the excuse. Because of these previous problems, defense counsel chose to mail the requests, rather than place them in the Attorney General's box at the courthouse. Apparently, the trial court believed that the discovery in question was sent, received, and misplacednot lost in the mail. The trial court aptly noted during the hearing on the motion to deem the requests admitted: "[I]f an office isn't distributing your mail appropriately ..., I don't think you can just ignore people's attempts to try to use the rules of discovery and other Rules of Civil Procedure[.]"
[3] We note that the trial court in this case did not equate the State's opposition to the admissions as necessarily constituting a motion to withdraw when, during the father's motion to deem the requested matters admitted, and after the State's objection to the admissions, the court stated: "We still haven't gotten the motion to withdraw [the admissions.]"
[4] At oral argument, concern was expressed that without an adjudication against the father the State would be unable to properly categorize the father, or require him to seek counseling or other help, which may come back to haunt the State or endanger other children at some future time. There is also the possibility that E.R. may have a change of heart and seek to return to her father's home in the future. The State can take comfort in the fact that if such developments arise, it can be heard on the merits at that time. See In re H.J., 1999 UT App. 238, ¶¶ 35-36, 986 P.2d 115 (noting res judicata not controlling in cases involving best interest of child).
[5] Clearly, the longer time frames in place regarding discovery in the Rules of Civil Procedure and the Code of Judicial Administration work well in a typical adjudication, but are not particularly well suited to juvenile cases that are statutorily required to be resolved in an expeditious manner. Under these rules, counsel would necessarily have to move for permission to shorten discovery time limits, or seek permission to continue discovery to within less than thirty days before trial, considering they only had sixty days to begin with. In light of the shortened time frames, it may well be that the rules regarding juvenile proceedings should be modified to simplify and clarify how and when to conduct discovery in child abuse, neglect, and dependency cases.