IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, in the interest of A.K. and M.K., persons under eighteen years of age. | ) ) ) ) ) | OPINION<br><br>Case No. 20100922-CA |
| _____ | ) | |
| | ) | |
| H.K., | ) | F I L E D |
| | ) | (August 16, 2012) |
| Appellant, | ) | |
| | ) | 2012 UT App 232 |
| v. | ) | |
| | ) | |
| State of Utah, | ) | |
| | ) | |
| Appellee. | ) | |

-----

Seventh District Juvenile, Moab Department, 537672
The Honorable Mary Manley

Attorneys:    Joyce G. Smith, Moab, for Appellant
             Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee
             Martha Pierce, Salt Lake City, Guardian ad Litem

-----

Before Judges Voros, Orme, and Davis.

VOROS, Associate Presiding Judge:

¶1    H.K. (Mother) challenges the juvenile court's termination of her parental rights. We affirm.

BACKGROUND[1]

¶2    The juvenile court terminated Mother's parental rights in five-year-old A.K. (Daughter) and one-year-old M.K. (Son) on February 25, 2011.[2] Prior to the termination, the Division of Child and Family Services (DCFS) had removed Daughter from Mother's custody three times and had removed Son once.

¶3    Daughter's first removal occurred in October 2007, while Mother was incarcerated. Mother had asked Daughter's grandmother to care for the child. However, the grandmother let Mother's domestic partner care for Daughter part of the time because she feared telling Mother's partner "no." In October, Daughter was injured while she was in the care of Mother's partner. The grandmother lied to the healthcare providers about the circumstances of the injury because she felt intimidated by Mother's partner. Based in part on these facts, the juvenile court ordered Daughter into the custody of DCFS. In March 2008, Daughter was returned to Mother's custody with protective supervision services.

¶4    Daughter's next removal occurred in February 2009. In violation of her family plan and despite Mother's awareness of her partner's history of violence, Mother allowed her partner to stay in her residence. Even after the court ordered Mother not to have any contact with her partner and not to allow her partner any contact with Daughter, Mother continued to associate with and expose Daughter to her partner. Mother also missed several drug tests and failed to inform DCFS of her loss of employment. Based in part on these facts, the juvenile court again ordered Daughter into the custody of DCFS.

¶5    Mother continued to miss drug tests while she was pregnant with Son, and the juvenile court ordered her to attend drug court. Son's father, E.O. (Father), was living with Mother at the time Son was born, and he agreed to participate in the family plan

---

[1]"Because the termination of parental rights is fact sensitive, we review the facts of the controversy in detail." *In re S.F.*, 2012 UT App 10, ¶ 1 n.3, 268 P.3d 831 (citation and internal quotation marks omitted), *cert. denied*, 280 P.3d 421 (Utah 2012).

[2]The parental rights of Daughter's father were also terminated, but he does not appeal. The parental rights of Son's father are the subject of a separate petition for termination and thus are not at issue in this appeal.

and submit to drug tests. He initially tested positive for marijuana, but the levels decreased with each test until he achieved a negative test. However, Father soon began skipping his scheduled drug tests, and shortly before Mother attended a permanency hearing to consider a trial home placement for Daughter, he left town. Following a successful trial home placement, the court returned Daughter to Mother's custody with protective supervision services in May 2010.

¶6    Daughter's third removal—and Son's first removal—occurred in September 2010. Mother had continued to miss drug tests and drug court appearances. When a DCFS caseworker visited Mother to follow up with her about a missed drug test, the caseworker found Father there. Father agreed to drug testing but did not submit to tests before leaving town again. Mother later falsely told the court that she was no longer involved with Father. In fact, Mother and Father were planning to permanently take the children out of the state in violation of an earlier court order regarding Daughter. They acquired airline tickets, but the State learned of their plans and Mother was arrested the day before they intended to leave.

¶7    Following Mother's arrest, DCFS filed a joint petition for custody and termination of Mother's parental rights. The juvenile court ordered removal of both children, granted custody to DCFS, and set a discovery schedule for the termination hearing.

¶8    In preparation for the termination hearing, DCFS sent 206 requests for admissions to Mother. Mother sent a blanket denial on the last permissible day, stating that she did not have time to provide more complete answers but that she would supplement her response within three days. She did so, admitting 135 requests and responding to the remaining seventy-one with "deny," "irrelevant," or "unknown." However, the juvenile court deemed all 206 requests admitted and granted partial summary judgment, ruling that the deemed admissions established grounds for terminating Mother's parental rights. *See* Utah R. Juv. P. 20A(g) (providing that requests for admissions not responded to within fourteen days "shall be deemed admitted"); *see also* Utah R. Civ. P. 36.

¶9    The juvenile court held a hearing to determine the best interests of the children. The court found that Daughter knew and loved Mother and had close connections with extended family. But the court also found that Daughter had been adversely affected by the repeated removals and out-of-home placements and had demonstrated

aggression since her last removal. While Son "ha[d] not suffered the harm of repeated removals," the court found that he was at risk to suffer the same harm and that nothing indicated that Mother would change her pattern of behavior. Both children were in a stable foster home where the foster parents had the capacity to provide stability and care for the children. The court also found that, while Mother was a caring and loving parent "[o]n the surface," Daughter had been harmed by Mother's conduct that led to the repeated removals. The court was persuaded that Mother was "not capable of protecting her children from future removals." She put her children at risk by continuing to expose them to drug use, and the "pattern of deception" she engaged in toward DCFS and the court demonstrated that she was aware that her behavior was not good for her children.

¶10 In light of these findings, the court concluded that terminating Mother's parental rights was in the children's best interests. The court also reaffirmed its finding of grounds for termination based on the evidence presented at the hearing. Therefore, on February 25, 2011, the court terminated Mother's parental rights in Daughter and Son.

ISSUES AND STANDARDS OF REVIEW

¶11 First, Mother contends on appeal that certain statutory procedures were not followed after the final removal of her children and that, consequently, the juvenile court lacked subject matter jurisdiction to hear the State's petition to terminate her parental rights. "Both jurisdictional questions and questions of statutory interpretation are questions of law that we review for correctness." *In re S.Y.T.*, 2011 UT App 407, ¶ 9, 267 P.3d 930.

¶12 Second, Mother asserts several due process claims. She argues that the alleged procedural defects violated her due process rights. She also argues that her due process rights were violated when the juvenile court based its decision to terminate her parental rights not on a hearing on the merits, but on facts that had been deemed admitted by her failure to respond to requests for admissions. Finally, she argues that on appeal, the wide latitude of discretion we give the juvenile court in reviewing its termination decisions effectively deprives her of her due process right to a meaningful appeal under the Utah Constitution. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

¶13 Third, Mother contends that the juvenile court erred by not withdrawing the 206 deemed admissions. We review a court's decision not to amend or withdraw admissions for abuse of discretion. *See Langeland v. Monarch Motors, Inc.*, 952 P.2d 1058, 1061 (Utah 1998).

¶14 Finally, Mother challenges the sufficiency of the evidence supporting the juvenile court's conclusions that grounds for termination existed and that termination would be in Son's best interest. Although the juvenile court originally ruled in granting partial summary judgment that grounds for termination had been established, it revisited and reaffirmed this conclusion after the termination hearing. *See supra* ¶ 10. Therefore, we will review the juvenile court's determination for clear error, reversing only if the result is "against the clear weight of the evidence or leave[s] the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435; *see also* Utah R. Civ. P. 52(a). "Simply because an appellate court may have come to a different result had it been the initial trier of fact does not permit it to reverse the juvenile court absent a firm and definite conviction that the court's decision was against the clear weight of the evidence." *In re B.R.*, 2007 UT 82, ¶ 14. Therefore, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.* ¶ 12. A best interest determination is also reviewed for clear error. *See id.*; *In re D.R.A.*, 2011 UT App 397, ¶¶ 7–8, 266 P.3d 844.


ANALYSIS

I. Subject Matter Jurisdiction

¶15 As a threshold matter we address Mother's jurisdictional argument. Mother contends that the proceedings below were plagued by several fatal defects. In her brief, Mother argues that after the final removal of her children, the juvenile court failed to hold a shelter hearing, an adjudication, and a dispositional hearing. Mother argues that the alleged procedural irregularities deprived the juvenile court of subject matter jurisdiction to consider the petition for termination of her parental rights.

¶16 "'[J]uvenile courts are creatures of statute . . . .' Accordingly, the juvenile court's jurisdiction is limited to that which the Legislature grants it . . . ." *In re Adoption of B.B.G.*, 2007 UT App 149, ¶ 5, 160 P.3d 9 (alteration in original) (quoting *In re B.B.*, 2004

UT 39, ¶ 19, 94 P.3d 252). The juvenile court's jurisdiction is governed by sections 78A-6-103 and -104 of the Utah Code. One type of proceeding over which a juvenile court has jurisdiction is a proceeding concerning "a child who is an abused child, neglected child, or dependent child." Utah Code Ann. § 78A-6-103(1)(c) (Supp. 2012);[3] *see also In re M.J.*, 2011 UT App 398, ¶ 49, 266 P.3d 850, *cert. denied*, 280 P.3d 421 (Utah 2012). Mother argues that the court is deprived of jurisdiction by its failure to strictly comply with the statutory procedures for the abuse, neglect, and dependency proceedings.

¶17    However, in the present case, the juvenile court's jurisdiction rested on a different statutory subsection. Section 78A-6-103 also grants the juvenile court jurisdiction in proceedings concerning "the termination of the legal parent-child relationship in accordance with Part 5, Termination of Parental Rights Act, including termination of residual parental rights and duties." Utah Code Ann. § 78A-6-103(1)(g). Even if the alleged defects deprived the court of jurisdiction over abuse, neglect, and dependency proceedings under subsection (1)(c)—an issue that we need not decide—the court clearly had jurisdiction over the termination proceedings in this case pursuant to subsection (1)(g).

## II. Due Process

¶18    Mother makes several due process arguments based on the proceedings below and on the appeals process. She argues that her due process rights were violated by the juvenile court's failure to hold certain hearings and by the court's use of admissions to establish grounds for termination. Mother also argues that the deferential standard of review employed by appellate courts in parental rights termination cases violates due process.

### A. Alleged Procedural Defects

¶19    Mother argues that the failure to hold a number of hearings after the final removal violated due process by depriving her of any opportunity to challenge the removal. However, Mother has not carried her burden on appeal to persuade us that the procedures followed below violated due process. In any appeal, the appellant must

---

[3]Where the relevant portions of the statute have not been substantively amended, we cite the current version of the code.

overcome the presumption "that a lower court has conducted its affairs properly and that the outcome of its process is sufficiently supported in law and fact." *State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448.

¶20    Mother has not clearly demonstrated which procedures were violated. She alleges that a number of required hearings were not held, but the record appears to conflict with Mother's characterization of the proceedings in several instances. Mother also argues that the failure to hold the proper hearings prevented her from challenging the basis of the removal. She points to one key fact that she was allegedly unable to challenge: her plans to leave the state with her children. However, Mother later admitted this fact in her supplemental response to DCFS's requests for admissions, and the fact was also established by other evidence presented at the termination hearing. Thus, Mother has not adequately demonstrated what the alleged procedural deficiency was or how, under the facts of this case, any alleged deficiency violated her due process rights.

B.  Requests for Admissions

¶21    Next, Mother contends that the juvenile court violated due process by using deemed admissions to establish grounds for termination. Mother argues that the governmental interest in using deemed admissions in termination proceedings does not outweigh the risk of error and the parent's fundamental liberty interest in maintaining a relationship with her child. *See generally Santosky v. Kramer*, 455 U.S. 745, 754 (1982) ("[T]he nature of the process due in parental rights termination proceedings turns on a balancing of the 'three distinct factors' specified in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L.Ed.2d 18 (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure.").

¶22    We do not address the merits of Mother's argument because it is unpreserved. "[T]o preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (second alteration in original) (citation and internal quotation marks omitted). "For a trial court to be afforded an opportunity to correct the error (1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or relevant legal authority." *Id.* (alterations in original) (citation and internal quotation

marks omitted).  "[T]he preservation rule applies to every claim, including constitutional questions . . . ."  *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

¶23    Mother claims that she preserved her constitutional argument by presenting it to the trial court in her objection to DCFS's motion for partial summary judgment.  Mother stated in her objection that "[t]he termination of parental rights is a serious issue that should not be determined on procedural technicalities."  Mother repeated this argument at the termination hearing, adding that the termination of parental rights involves "a significant liberty interest."  Although the phrase "significant liberty interest" does typically refer to a due process argument, Mother never characterized the reliance on the deemed admissions as a due process violation.  Moreover, she did not introduce any relevant legal authority in her memorandum or at the hearing to alert the juvenile court to her constitutional arguments.  Thus, Mother forfeited her due process argument with respect to the admissions by failing to specifically raise it before the juvenile court in such a way that the court had an opportunity to recognize and rule on it.

C.  Right to a Meaningful Appeal

¶24    Finally, Mother contends that due process requires appellate courts to engage in a more searching review of the facts in parental rights termination cases.  We recently considered this argument in *In re S.Y.T.*, 2011 UT App 407, 267 P.3d 930, in which the appellant argued, as Mother does here, that a de novo standard of review should be adopted because "the 'wide latitude of discretion' generally employed on appeals from the juvenile court deprives [parents] of a meaningful right of appeal and amounts to a violation of their due process rights under the Utah Constitution."  *See id.* ¶ 11.

¶25    We explicitly rejected this argument in *In re S.Y.T.*, which was issued after Mother filed her briefs on appeal but before this case was argued.  We held that the supreme court's ruling in *In re Z.D.*, 2006 UT 54, 147 P.3d 401, essentially "determine[d] that an 'appellate trial de novo' on an appeal from the juvenile court is inappropriate under the current statutory framework."  *In re S.Y.T.*, 2011 UT App 407, ¶ 33.  We also held that "the application of [the clear error] standard of review is not a mere empty gesture or a prima facie deprivation of due process rights" under the Utah Constitution.  *See id.* ¶¶ 35, 37.

¶26    At oral argument, however, Mother argued that even if the application of the clear error standard of review did not violate due process generally, it did so here.

Mother argues that it is inappropriate to apply any deference to the juvenile court's findings of fact because the juvenile court exercised no discretion when it based its grant of partial summary judgment on admissions. We do not address Mother's challenge because, as noted above, *see supra* ¶ 10, the juvenile court reaffirmed its partial summary judgment ruling on the merits after hearing evidence at trial, thus negating the basis of Mother's argument.

## III. Withdrawal of Admissions

¶27    Next, Mother contends that the juvenile court should have withdrawn the deemed admissions and accepted her supplemental response to the requests for admissions. *See* Utah R. Juv. P. 20A(g) ("Upon a showing of good cause, any matter deemed admitted may be withdrawn or amended upon the court's own motion or the motion of any party."). Mother argues that the court abused its discretion in rejecting her request to withdraw the admissions.

¶28    "[T]he need to protect the best interests of the child" does not automatically make use of admissions in a termination of parental rights case an abuse of discretion. *See In re E.R.*, 2000 UT App 143, ¶¶ 10–12, 2 P.3d 948 (declining to rule out the use of admissions in an abuse, neglect, and dependency proceeding and holding that juvenile court did not abuse its discretion in refusing to withdraw admissions by DCFS). Whether admissions should be withdrawn depends on the particular facts of each case. *See id.* ¶¶ 12–13, 17–20; *id.* ¶ 17 ("The best interests of the child and the facts and circumstances surrounding the child's current status are also properly considered in determining whether or not to permit withdrawal of the admissions.").

¶29    Under the facts of this case, even if the juvenile court did abuse its discretion, any error was harmless. *See In re A.C.*, 2012 UT App 117, ¶ 5, 276 P.3d 1241 ("'[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings.'" (alteration in original) (quoting *State v. Evans*, 2001 UT 22, ¶ 20, 20 P.3d 888)). The termination hearing was nominally limited to the issue of the best interests of the children because the court had previously relied on the 206 deemed admissions to grant partial summary judgment on the issue of grounds for termination. However, at the close of the hearing, the juvenile court reaffirmed its conclusion that grounds for termination existed in light of the testimony presented at the hearing. The court reiterated in its written order—in response to Mother's objections to use of the admissions—that it based its findings not only on the

admissions but also on testimony from the hearing, stipulated facts from prior adjudications, and drug court minutes.  The court concluded that parental unfitness was established by "a great deal of evidence both at trial and from the admissions."

¶30    Furthermore, the contested admissions involve only a limited set of facts. Mother objects to facts deemed admitted in her blanket denial but denied in her supplemental response.  However, in her supplemental response, Mother admitted to all but seventy-one of the 206 requests.  The facts stated in most of the seventy-one contested requests were established by testimony at the hearing, through drug court records, or by Mother's stipulations in prior adjudications.[4]  For purposes of this appeal, we have limited our recitation of the facts of the case to those facts actually admitted by Mother in prior stipulations or in her supplemental response, or for which there is independent evidentiary support in the record.  *See supra* ¶¶ 2–9.  We similarly limit our analysis of the sufficiency of the evidence in Part IV below.  Because we conclude below that the evidence supports grounds for termination even without considering denials for which there is no other evidentiary support, any abuse of discretion by the juvenile court was harmless.

IV.  Sufficiency of the Evidence

¶31    Mother contends that the evidence is insufficient to support the court's findings that grounds for termination exist and that termination was in Son's best interest.

A.  Grounds for Termination

¶32    Before a juvenile court can terminate a parent's rights, a petitioner must establish, by clear and convincing evidence, at least one of the grounds for termination set forth in Utah Code section 78A-6-507.  *See* Utah Code Ann. §§ 78A-6-506(3), -507(1) (2008).  The juvenile court found the following grounds for termination:  Mother had "neglected or abused the child[ren]," *see id.* § 78A-6-507(1)(b); she was "unfit or incompetent," *see id.* § 78A-6-507(1)(c); she made "only token efforts" "to avoid being an unfit parent" and "to eliminate the risk of serious harm to the child[ren]," *see id.* § 78A-6-507(1)(f)(iii)–(iv); and, after Daughter was returned to live with Mother, Mother

---

[4]A number of the contested requests also dealt with legal conclusions rather than factual matters.  The juvenile court expressly stated that its analysis did not rely on any legal conclusions in the requests for admissions.

"substantially and continuously or repeatedly refused or failed to give [Daughter] proper parental care and protection," *see id.* § 78A-6-507(1)(h).

¶33　The evidence supports the finding that Mother made only token efforts to avoid being an unfit parent and to eliminate the risk of serious harm to her children. "[T]oken efforts" involve "minimal or superficial efforts given the parent's circumstances." *In re T.E.*, 2011 UT 51, ¶ 37, 266 P.3d 739; *see also In re Adoption of B.O.*, 927 P.2d 202, 209 (Utah Ct. App. 1996) (defining "token efforts" as "'merely simulated; slight or of no real account'" (quoting *Webster's New Twentieth Century Dictionary* 1919 (2d ed. 1979))). Looking at "the totality of the evidence" and "weigh[ing Mother's] past conduct with her present abilities," *see In re B.R.*, 2007 UT 82, ¶ 13, 171 P.3d 435, the juvenile court determined that Mother "ha[d] not changed her history," and that she "continued a pattern of deception" that led the court to be unable to trust that she had effected change in her life. Mother demonstrated a pattern of exposing her children to harm and entering into relationships with individuals who were violent or used drugs. Mother missed drug tests and drug court, she was employed only sporadically, and she was unemployed at the time of the termination hearing. She repeatedly misled DCFS and the court about her conduct and circumstances, hiding conduct that was harmful to the children. And she made arrangements to take her children out of the state, flouting a court order put in place for the benefit of Daughter, and was briefly incarcerated for this action. In light of these facts, Mother has not demonstrated that the court's conclusion constituted clear error. *Cf. In re S.H.*, 2005 UT App 324, ¶ 23, 119 P.3d 309 (concluding that a finding of unfitness was supported by, among other evidence, findings that a father failed to appear in drug court, that he disobeyed court orders, and that he was incarcerated after his child was born).

B.  Best Interests

¶34　After finding grounds for termination, the juvenile court must determine, by clear and convincing evidence, whether termination of parental rights is in a child's best interest. *See* Utah Code Ann. §§ 78A-6-503(2), -506(3) (2008); *In re A.C.M.*, 2009 UT 30, ¶ 23, 221 P.3d 185 ("In order to terminate parental rights, the juvenile court must make two separate findings. First, it must find grounds for termination under Utah Code section 78A-6-507. . . . Second, the juvenile court must find that termination of the parent's rights is in the best interests of the child." (citations omitted)).

¶35　Mother contends that the juvenile court erred by concluding that termination of her parental rights was in Son's best interest. Mother does not challenge any specific

findings regarding the child's best interest. Rather, she argues that while Father retains his parental rights, it would not be in Son's best interest to have Mother's rights terminated, because Son would then lose the right to receive financial support from Mother. *See In re E.R.*, 2001 UT App 66, ¶ 13, 21 P.3d 680 ("[C]hildren lose certain rights when termination occurs, such as support from their parents."). However, Mother has not demonstrated an ability to provide financial support. For example, she was unemployed at the time of the termination hearing and has had problems keeping a job throughout the history of the case. Thus, Mother has not shown that the juvenile court clearly erred in finding, by clear and convincing evidence, that termination was in Son's best interest.

CONCLUSION

¶36    The juvenile court had jurisdiction over the termination proceedings in this case. Mother's due process claims fail because she did not preserve her arguments below and has failed to carry her burden on appeal. And the juvenile court's refusal to withdraw the deemed admissions was harmless because the court's findings are supported by sufficient evidence even without considering the contested admissions.

¶37    Affirmed.


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


-----


¶38    WE CONCUR:


_____
Gregory K. Orme, Judge


_____
James Z. Davis, Judge


20100922-CA                                12