**STATE of Utah, in the interest of C.B., a person under eighteen years of age.**

**H.M., Appellant,**

v.

**State of Utah, Appellee.**

**No. 981867–CA.**

Court of Appeals of Utah.

Oct. 15, 1999.

Scott L. Wiggins, Arnold & Wiggins PC, Salt Lake City, for Appellant.

Jan Graham Attorney General, and John Peterson, Attorney General's Office, Salt Lake City, for Appellee.

Martha Pierce, Guardian Ad Litem, Salt Lake City.

Before GREENWOOD, Associate P. J., and BENCH, and ORME, JJ.

## OPINION

BENCH, Judge:

¶ 1  Appellant, H.M., challenges the juvenile court's final order finding that her child, C.B., is "neglected" based on H.M's admissions to the State's petition and her voluntary return to an abusive relationship. We affirm.

## BACKGROUND

¶ 2  H.M. is the natural mother of C.B. (the child). On numerous occasions, the child was present while N.B. (the father) physical- ly abused H.M. and engaged in conduct that placed both H.M. and the child at serious risk of injury. H.M. reported many of the abuse incidents to police and filed three protective orders. However, between protective orders, H.M. voluntarily returned to the relationship with the father.

¶ 3  The State filed a verified petition alleging that the child was abused or neglected. The court allowed the child to remain with H.M. under the protective supervision of the Division of Child and Family Services. The father admitted to all of the allegations in the State's petition, while H.M. admitted to all but two of them. At a trial scheduled to address the two remaining allegations concerning H.M., the State elected to submit the matter to the court based solely on H.M.'s previous admissions. The court then questioned H.M. regarding her claim that she did everything possible to prevent the child from being exposed to the father's abuse, given the number of violent disputes the child witnessed. H.M. conceded that she voluntarily returned to the father between protective orders. The court then determined that the child was "neglected" based on the eleven admitted allegations and H.M.'s voluntary return to the father between protective orders. H.M. appeals the decision, arguing that the juvenile court erred in its determination that the child was "neglected" within the meaning of the statute.

## ISSUE AND STANDARD OF REVIEW

¶ 4  The issue presented for review in this appeal is whether the juvenile court properly found that neglect was proven by clear and convincing evidence, based upon the eleven admitted allegations in the State's petition and the fact that H.M. voluntarily returned to an abusive relationship with the father.

¶ 5  This issue presents a mixed question of law and fact, requiring a review of the juvenile court's application of statutory law to the facts. We review findings of fact for clear error, with deference given to the trial court. See State v. Pena, 869 P.2d 932, 935–36 (Utah 1994). We review conclusions of law for correctness, giving no deference. See id. at 936. However, the trial court is

afforded some discretion in applying the law to the facts. *See id.* at 937.

## ANALYSIS

¶ 6 We first dispose of H.M.'s contention that the juvenile court proceeded to determine neglect sua sponte. Our review of the record confirms that the juvenile court did not address the issue sua sponte. The State did not waive the entire neglect petition, as H.M. asserts, but simply expressed a desire to waive any reliance on the two allegations H.M. had denied. The State made this clear in stating, "And so . . . as paragraphs 12 and 13 relate to the mother, we do not proceed on this." Therefore, the only issue remaining is the court's determination of neglect.

¶ 7 A "neglected child" includes a minor whose parent has subjected the child to mistreatment or lack of proper parental care due to the faults or habits of the parent. *See* Utah Code Ann. § 78–3a–103(1)(r)(i)(A)–(B) (Supp.1999). "Neglect" must be established by clear and convincing evidence. *See* Utah R. Juv. P. 41(b).

■ ¶ 8 In this case, the juvenile court properly determined that "neglect" was clearly and convincingly shown. H.M. admitted to the following relevant allegations of the State's verified petition:

4. On March 17, 1994, when [the child] was approximately two weeks old, [H.M.] and [the father], while in separate cars, began arguing with each other. A high speed chase ensued and [the father] attempted to run [H.M.] off the road. [The father] eventually rammed his vehicle into [H.M.'s] vehicle. [The child] was in [H.M.'s] vehicle during this incident. [The father] was arrested and transported to the Davis County Jail.

5. On February 10, 1995, [H.M.] contacted law enforcement claiming that she was the victim of domestic violence involving [the father]. [H.M.] claimed the domestic violence had been happening for two years.

6. On July 23, 1995, [the father], while wearing boots, kicked [H.M.] in the head and shoulder. [The child] was present during the assault. [The father] was ar-

rested and transported to the Davis County Jail.

7. On March 31, 1996, law enforcement responded to the residence of [H.M.] and [the father]. [H.M.] and [the father] were in a verbal fight. Both parties were separated for the night.

8. On April 8, 1996, [H.M.] and [the father] became involved in an altercation in which [H.M.] was physically injured. [The child] was present during the fight. [The father] was arrested and transported to the Davis County Jail.

9. On March 2, 1997, [the father], in an intoxicated state, struck [H.M.] and [the child]. Law enforcement provided a civil stand-by while [H.M.] left the residence.

10. On July 19, 1997, [H.M.] attempted to pick up [the child] at [the father's] residence. [The father] refused to return [the child]. [The father] also chased [H.M.] with a bat, pipe or club of some type.

11. On July 23, 1997, while [H.M.] was visiting a friend, [the father] entered the apartment and chased [H.M.] to a back room. [H.M.] locked the door to the room but [the father] gained access by kicking down the door. Once in the room, [the father] destroyed a table. [The child] was present during this incident.

While it is implicit in the foregoing admissions, H.M. conceded, in open court, that she had voluntarily returned to the relationship with the father between protective orders.

¶ 9 Taken together, the foregoing supports the juvenile court's determination that H.M. subjected the child to "ongoing interaction in conduct that placed [the child] at risk." H.M. knew that the father's violence harmed the child in the past, and that there was great potential for future harm. Despite this knowledge, H.M. voluntarily returned to the abusive relationship with the father, thereby potentially subjecting the child to witness, or be the victim of, further abuse. It is sad and unfortunate that H.M. was often the victim of the father's abuse; however, H.M. had a statutory duty not to knowingly place the child in harm's way. *See* Utah Code Ann. § 78–3a–301(1)(c) (Supp.1999) (stating that allowing child to be in physical presence of alleged abuser, if parent has

actual notice that abuse has occurred, constitutes prima facie evidence that child is at risk of being physically abused).

¶ 10 An adjudication on the ground of "neglect" is followed by "protective supervision," "whereby the [child] is permitted to remain in his home, and supervision and assistance to correct the abuse, neglect, or dependency is provided by the probation department or other agency designated by the court." Utah Code Ann. § 78–3a–103(1)(u) (Supp.1999). Both the child and H.M. may benefit from the supervision and assistance the State can provide.

¶ 11 Based upon the evidence before the juvenile court, the judge properly ruled that there is sufficient to show that she had, through her own choices and actions, gone back into a relationship that continued being violent, explosive, if not physically, at least verbally. But there were even admissions to [the child] being present during the fight on April 8, 1996. Because of his young age, he ... does fit within the definition of a neglected child.

## CONCLUSION

¶ 12 The juvenile court properly determined that the child was a "neglected child" for statutory purposes. We therefore affirm.

¶ 13 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and GREGORY K. ORME, Judge, concur.