57 P.3d 1130 (2002)
2002 UT App 340
STATE of Utah, in the interest of F.M., S.M., D.M., and C.M., persons under eighteen years of age.
S.S., Appellant,
v.
State of Utah, Appellee.
No. 20010128-CA.
Court of Appeals of Utah.
October 18, 2002.
*1131 Sharon L. Preston, Salt Lake City, for Appellant.
Mark L. Shurtleff, Attorney General, and John M. Peterson, Assistant Attorney General, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, and Craig M. Bunnell, Sandy, Guardians Ad Litem.
Before Judges BILLINGS, GREENWOOD, and ORME.

MEMORANDUM DECISION
GREENWOOD, Judge:

I. Termination of Parental Rights
¶ 1 S.S. (Mother) appeals the juvenile court's order terminating her parental rights. Mother argues there was insufficient evidence to support certain factual findings made by the juvenile court, the legal conclusions were unsupported by factual findings, and there was insufficient evidence to support *1132 beyond a reasonable doubt the finding that Mother's continued custody of the children would likely result in serious emotional or physical damage to them.
¶ 2 First, Mother argues that there was insufficient evidence to support some of the juvenile court's factual findings. "Findings of fact in a parental rights termination proceeding are overturned only if they are clearly erroneous." In re G.B., 2002 UT App 270, ¶ 9, 53 P.3d 963 (quotations and citation omitted). Mother challenges portions of a finding regarding the best interests of the children; namely, that Mother is still co-dependent on the children's father (Father) and unable to protect the children from Father. We conclude that in addition to the findings incorporated by the juvenile court from previous hearings, sufficient evidence was presented at the termination trial to support the court's findings.
¶ 3 The evidence presented included testimony from Mother's therapist regarding Mother's continued co-dependency issues. Mother's therapist testified that Mother would need over a year of further therapy to treat her co-dependency issues, but even then, it was far from certain she could overcome them. In addition, Mother's case worker testified that on numerous occasions Mother had talked to her about leaving Father, regaining custody of her children, and then getting back with Father. Further, Mother admitted to having contact with Father just two weeks before the trial when she accepted a ride home from him. Mother also admitted that although Father had recently moved out of the family's trailer home, Father was still living in the same trailer park as Mother. Finally, the court heard evidence that Father was recently substantiated[1] for physical abuse while Mother was living in the same household and Mother did nothing to stop the abuse. Therefore, the evidence supports the court's findings of Mother's co-dependency and inability to protect the children.[2]
¶ 4 Mother also challenges the court's conclusions that she neglected the children, is unfit or incompetent, that there has been a failure of parental adjustment, and that she is unwilling or unable to remedy the circumstances that led to the children's placement with the Division of Child and Family Services (DCFS). "Conclusions of law are reviewed by this court for correctness, giving no deference to the trial court. However, we do afford the juvenile court some discretion in applying the law to the facts." In re J.B., 2002 UT App 267, ¶ 15, 53 P.3d 958 (citations omitted). Mother argues, inter alia, that the court erred in focusing on Mother's past and not considering her abilities at the time of the termination proceeding. Evidence was presented that although it appeared Mother made substantial progress in completing her service plan, she failed to internalize the skills she had learned and was unable to offer the structured environment that her special needs children require. See In re C.Y., 765 P.2d 251, 255 (Utah Ct.App.1988) (noting effort to improve one's parenting skills is not determinative if "no significant improvement in [the parent's] parenting skills has been noted despite [the parent's] efforts"); see also In re S.L., 1999 UT App 390, ¶ 28 n. 5, 995 P.2d 17 (noting Mother's progress on second treatment plan and desire to regain custody of her son, alone, is not persuasive in determining whether juvenile court's findings are clearly erroneous). We have carefully reviewed both the evidence in this case and the juvenile court's findings of fact and conclude that there is no error in the juvenile court's conclusions of law.
*1133 ¶ 5 Finally, Mother argues that neither the findings nor expert testimony presented were sufficient to terminate her parental rights under the Indian Child Welfare Act (ICWA). See 25 U.S.C. §§ 1901-1963 (1994). Under ICWA, the juvenile court "must make a determination that `continued custody of the children by the parent ... is likely to result in serious emotional or physical damage to the child.' That determination must be supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses." In re S.A.E., 912 P.2d 1002, 1004 (Utah Ct.App.1996) (quoting 25 U.S.C. § 1912(f) (1994)).
¶ 6 Mother takes issue with the testimony of Ms. Watson, the expert witness called specifically to address compliance with ICWA. Mother argues that Ms. Watson had no personal knowledge of the case and that she based her testimony only on her review of the case file. However, Ms. Watson testified that her opinion was based not only on her review of the file, but also on case staffing done with the family's ongoing case manager for the Navajo Nation who had prepared an extensive file noting the "parent's abusive history, ... and the seriousness of the children's behavior." In addition, Ms. Watson's opinion was formed after talking with the family's DCFS social worker. "`The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.'" State v. Kelley, 2000 UT 41, ¶ 23, 1 P.3d 546 (quoting Utah R. Evid. 703).
¶ 7 Based on Ms. Watson's testimony and the extensive files of the Navajo Children and Family Service program (NCFS), along with the testimony from the children's social workers regarding the children's severe behavioral disorders and their need for a competent custodian who can offer a very structured environment, the juvenile court concluded that returning the children to their Mother would likely result in serious emotional and physical damage to the children. Because the evidence supports that Mother is not in a position to offer the structured environment these children require, and because the children's extreme behaviors are due to the past parenting they received while in Mother's home, the court had ample evidence to support its findings beyond a reasonable doubt, as required by ICWA.
¶ 8 Based on the foregoing, we affirm.

II. Briefing
¶ 9 We wish to comment upon the Attorney General office's failure to file a brief on behalf of DCFS. Instead of providing independent case law and analysis supporting the juvenile court's decision to terminate Mother's parental rights, the Attorney General merely concurred with the Guardians Ad Litem's (the Guardian) brief. We believe that the Attorney General's concurrence is wholly inappropriate in this case because of the different parties and interests represented by the State and the Guardian. See Utah Code Ann. § 78-3a-909(1) (1996) ("The attorney general shall represent the [S]tate in all appeals under this chapter."); Utah Code Ann. § 78-3a-912(2) (1996) (stating a guardian ad litem "shall represent the best interest of each minor ..."); see also In re T.J., 945 P.2d 158, 163 (Utah Ct.App.1997) (stating DCFS and Attorney General's office protect the interests of the State, while the Guardian Ad Litem's office represents the interests of the children and these interests "are distinct and can differ").
¶ 10 Given the absence of briefing for DCFS, the briefs in this case were inadequate to provide a full picture for this court regarding the appropriateness of the termination of Mother's parental rights. This necessitated that we meticulously comb the record to determine whether there was sufficient evidence to support the juvenile court's decision. In this case, Mother had attempted to rehabilitate herself and had complied to some extent with the service plans. Therefore, DCFS was required to carefully and thoroughly demonstrate that the juvenile court acted appropriately in terminating Mother's parental rights. Additionally, in light of the higher standard of proof required in Mother's case under ICWA, and the fact that there are very few published decisions regarding the termination of parental rights of Indian children, it was that much more incumbent upon the Attorney General's office to have filed a brief. Court-ordered termination of parental rights must *1134 be conducted with appropriate seriousness and thoroughness by all involved. The potential effects of child welfare proceedings on families, children, and society are too important to treat them in a perfunctory or casual manner. We therefore urge the Attorney General's office to submit briefs in the future, on behalf of its client, the State.
¶ 11 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and GREGORY K. ORME, Judge.
NOTES
[1] See Utah Code Ann. §§ 78-3a-104(8), -320(1) (Supp.2002) (stating that juvenile court is to make findings of "substantiated, unsubstantiated, or without merit" regarding allegations of severe child abuse or neglect).
[2] Mother also argues that one of the court's findings was based on a report not offered into evidence; therefore, Mother did not have an opportunity to rebut the allegation. However, the State requested that the court take judicial notice of all the conclusions, findings, orders, and official documents previously presented and accepted by the juvenile court in Mother's case. The court took judicial notice without objection from Mother's counsel. Courts may "take judicial notice of the records and prior proceedings in the same case." Riche v. Riche, 784 P.2d 465, 468 (Utah Ct.App.1989) (citation omitted); see Utah R. Evid. 201. Therefore, the court did not err in considering the report.