Opinion
CHRISTIANSEN, Judge:
1 A.J. (Mother) appeals from the juvenile court's order terminating her parental rights with respect to her daughter, K.J. Mother asserts that the juvenile court erred in determining that the Juvenile Court Act's (the Act) reunification timelines precluded additional reunification efforts and that the juvenile court's termination of Mother's parental rights was against the clear weight of the evidence. We affirm.
BACKGROUND
T2 K.J. was born in April 2010 to Mother.[2] In July 2010, Mother moved with her brother, sister-in-law, and KJ. to Ogden, Utah. N.B. (Father) is K.J.'s natural father. At the time of trial, Father had seen K.J. only one time, had never made visitation arrangements, had not financially supported KJ., and had never attempted to assert his parental rights.[3]
13 On July 29, 2010, K.J. was taken by ambulance to an emergency room due to difficulty breathing and lethargy. X-rays revealed four broken ribs, a broken collarbone, and both old and new indications of chronic bilateral subdural hematomas and retinal hemorrhaging. KJ. was taken by helicopter to Primary Children's Medical Center (PCMC) where additional tests indicated chronic sub-dural fluid collection, a more recent subdural hemorrhage, and healing rib and collarbone fractures. The examining doctor at PCMC *1206 reported that the fractures were approximately two to three weeks old and that the likely cause of K.J.'s injuries was inflicted trauma.
4 On August 2, the juvenile court signed a warrant ordering K.J. to be placed in the custody of the Division of Child and Family Services (the Division). On August 12, the juvenile court held a pretrial hearing on the State's verified petition to adjudicate K.J. as abused, neglected, or dependent. Mother declined to admit or deny the factual allegations in the petition and the juvenile court therefore deemed the allegations in the petition to be true.[4] Based on these facts, the juvenile court adjudicated K.J. as abused and neglected and ordered that her custody with the Division be continued.
5 In its September 1, 2010 order adjudicating K.J. as abused and neglected, the juvenile court ordered Mother to contact the Office of Recovery Services (ORS) to arrange for and pay child support and to complete a child and family plan (the Plan) that required, among other conditions, that Mother maintain stable and suitable housing and stable employment. The juvenile court established reunification with Mother as the primary permanency goal, with adoption as a concurrent permanency goal in the event that Mother "failled] to meet the goals of a treatment plan or follow [court] orders." The court ordered the Division to provide reunification services to Mother until the time set for the permanency hearing. KJ. was thereafter placed in foster care with appellees T.M. and LM. (Foster Parents). A permanency hearing was set for January 20, 2011, which was subsequently rescheduled for March 21, 2011. During this time, Mother completed most of the goals outlined in the Plan, but she was unable to obtain stable employment or suitable housing. Mother also failed to comply with the juvenile court's order to contact ORS to arrange for and pay child support.
T6 At the March 21, 2011 hearing, the State submitted a verified petition to terminate Mother's and Father's parental rights with respect to K.J. The State's request to terminate Mother's rights was based principally on Mother's inability or failure to provide for K.J.'s needs, including Mother's failure to comply with the employment and housing requirements of the Plan and her failure to comply with the juvenile court's order to contact ORS and arrange for child support. The parties then investigated placing K.J. with her maternal grandmother in Mexico but they were ultimately unsuccessful in making the necessary arrangements. On May 26, 2011, Foster Parents filed a third-party petition for termination of Mother's and Father's parental rights with respect to K.J. In August 2011, the State withdrew its termination petition and trial on Foster Parents' petition was set for November 2011.
T7 Following the termination trial on November 3, 2011, the juvenile court entered findings of fact and conclusions of law and ordered Mother's and Father's parental rights with respect to KJ. terminated. Mother appeals the termination of her parental rights.
ISSUES AND STANDARDS OF REVIEW
18 Mother first claims that the juvenile court erred in determining that the timelines established by the Act precluded additional time for reunification of K.J. with Mother. We review the juvenile court's interpretation of the Act for correctness. In re S.F., 2012 UT App 10, ¶ 24, 268 P.3d 831.
T9 Mother also asserts that the juvenile court's termination of her parental rights is against the clear weight of the evidence. We review a juvenile court's determinations that grounds for termination exist and that termination is in the best interest of the child "for clear error, reversing only if the result is 'against the clear weight of the evidence or leave[s] the appellate court with a firm and definite conviction that a mistake has been made."" In re A.K., 2012 UT App 232, ¶ 14, 285 P.3d 772 (alteration in original) (quoting In re B.R., 2007 UT 82, ¶ 12, 171 P.3d 435). *1207 "When a foundation for the [juvenile] court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." In re B.R., 2007 UT 82, ¶ 12, 171 P.3d 435.
ANALYSIS
I. The Juvenile Court Did Not Err In Determining that the Juvenile Court Act Did Not Provide Additional Time for Reunification.
{10 First, Mother argues that the Act's timelines governing the time for decision on a termination petition and limiting the duration of reunification services are applicable only when termination proceedings are initiated by the Division and not when a third party files a termination petition. She thus claims that the juvenile court erred by applying the timelines set forth in the Act, specifically Utah Code sections T8A-6-812 and - 314, to the proceedings before it. Next, Mother argues that even if the timelines are applicable to a proceeding involving a private termination petition, a termination petition need not be adjudicated until eighteen months after the child was removed from the home, in accordance with subsection - 314(18)(c), and the juvenile court therefore erred in its conclusion that no time for reunification remained.
A. The Act's Timelines Were Applicable in This Proceeding.
{11 Mother argues that because Utah Code section 78A-6-510 identifies specific considerations the juvenile court must make when the Division has instituted proceedings to facilitate the adoption of a child by foster parents, the Act's termination and reunification timelines are not applicable in a termination proceeding initiated by a third party. We disagree. -
1 12 "When interpreting a statute ... [wle employ plain language analysis to carry out
the legislative purpose of the statute as expressed through the enacted text." See Richards v. Brown, 2012 UT 14, ¶ 23, 274 P.3d 911. "Where a statute's language is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends." Id.
T13 First, the plain language of the Act does not restrict the timeline for decision on a termination petition only to petitions filed by the Division. The Act provides, "Any interested party, including a foster parent, may file a petition for termination of the parent-child relationship with regard to a child." Utah Code Ann. § 78A-6-504 (Lexis-Nexis 2012).[5] "A decision on a petition for termination of parental rights shall be made within 18 months from the day on which the minor is removed from the minor's home." Id. § 78A-6-814(18)(c). Subsection - 314(13)(c) makes no distinction between petitions brought by the Division and those brought by a third party; it unambiguously applies to both. Mother argues that a reference to Division-instituted proceedings in a different section of the Act, unrelated to these timelines, compels the result that the given timelines are applicable only to Division-filed termination petitions. This interpretation is neither "obvious," as Mother asserts, nor consistent with the plain language of the statute.
4 14 Second, the shorter timelines imposed by the Act on the underlying reunification proceedings are applicable when a private termination petition has been filed because the reunification timelines operate independently of the termination proceeding.[6] "The time period for reunification services may not exceed 12 months from the date that the minor was initially removed from the minor's home, unless the time period is extended under Subsection 78A-6-314(8)." Id. § 78A-6-312(18)(a) (Supp.2018). "If reunification services are ordered, a permanency hearing *1208 shall be conducted by the court ... at the expiration of the time period for reunification services." Id. § T8A-6-812(16)(a). With respect to a child who is thirty-six months old or younger when removed from the home, the permanency hearing shall be conducted within eight months from the date of removal. Id. § T78A-6-312(17) (2012).[7] These timelines are applicable in all proceedings where a child is removed from the home on the basis of a finding of abuse, neglect, or dependency. See id. §§ T8A-6-304, -306, - 307(17), -811, -812(2), -812(18)(a), -812(16)(a) (2012 & Supp.2018). The plain language of the Act does not impose a different timeline upon reunification efforts based on the filing of a termination petition, whether by the Division or a private party.
4 15 Because the plain language of the Act does not provide for different termination or reunification timelines when a third-party termination petition has been filed, the juvenile court did not err in concluding that the statutory timelines were applicable to this proceeding.
B. The Act Did Not Allow Additional Time for Reunification.
116 Mother next asserts that even if the statutory timelines applied to her reunification efforts, there was nevertheless time remaining to reunify K.J. with Mother at the time of trial. Mother argues that Utah Code section 78A~6-314(13)(c) is the only provision that could have required her to "resume custody immediately" in the event that the termination petition was not granted, and that section -814(18)(c) only requires the court to adjudicate a termination petition within eighteen months of the child's removal from the home. See id. § 78A-6-814(18)(c) (2012). Because K.J. had only been in an out-of-home placement for fifteen months at the time of trial, Mother argues that three months remained for the Division to reunify K.J. with Mother.
117 However, the juvenile court did not base its determination that no time remained for reunification on the time limit for adjudicating a termination petition. Rather, the juvenile court found that "permanency for a child of this age should be achieved within [eight] months with the possibility of another six months," consistent with the reunification timelines provided in Utah Code sections 78A-6-812(17) and -814(8)[8] Because more than fourteen months had elapsed since K.J. had been removed from Mother's home, the juvenile court would have been required to terminate reunification services and make a permanency determination with respect to K.J. if the termination petition had not been granted. See id. § 78A-6-312(16)(a) ("[A] permanency hearing shall be conducted by the court ... at the expiration of the time period for reunification services."). The juvenile court would have been required to determine whether K.J. could safely be returned to Mother at that time. See id. $ 7T8A-6-815(2)(a). "[If a minor is not returned to the minor's parent or guardian at | the permanency hearing," the court must terminate reunification services and make a final determination regarding an alternate permanency plan, such as termination of parental rights or adoption. Id. § T8A-6-314(4) (emphasis added).[9]
*1209 [18 Because K.J. was less than thirty-six months old when she was removed from the home and more than fourteen months had passed since her removal, the juvenile court did not err in determining that the Act precluded continued reunification efforts.
II. The Juvenile Court's Termination of Mother's Parental Rights Is Not Against the Clear Weight of the Evidence.
[19 Mother next argues that the juvenile court's decision to terminate her parental rights was against the clear weight of the evidence presented at trial A court may terminate parental rights with respect to a parent if it finds that any one of the cireum-stances enumerated in Utah Code section T8A-6-507 exists. See Utah Code Ann. § T8A-6-507 (LexisNexis 2012). The juvenile court premised the termination of Mother's parental rights upon its conclusion that Mother abused KJ., see id. § T78A-6-507(1)(b),[10] that Mother was unfit, see id. § 78A-6-507(1)(c), that Mother had been unable to remedy the circumstances causing the child's out-of-home placement and would not be capable of exercising proper and effective parental care in the near future, see id. § 78A-6-507(1)(d), and that Mother failed to adjust parentally, see id. § 78A-6-507(1)(e). Mother specifically challenges the juvenile court's conclusions that she had failed to adjust parentally, that her failure to pay financial support is evidence that she was unfit, and that she was not capable of exercising proper and effective parental care under subsection T78A-6-507(1)(d)@i) at the time of trial.
120 Mother also challenges the juvenile court's best interest determination, arguing that the juvenile court misunderstood the custody arrangement proposed by the Division. See id. § T8A-6-506(8) ("IIIf a parent is found ... to be unfit or incompetent based upon any of the grounds for termination described in this part, the court shall then consider the welfare and best interest of the child of paramount importance in determining whether termination of parental rights shall be ordered.").
A. The Juvenile Court's Determination that Mother Failed to Adjust Parentally Is Not Against the Clear Weight of the Evidence.
121 Mother argues that the juvenile court's determination that she had failed to adjust parentally is against the clear weight of the evidence. The juvenile court "may terminate all parental rights with respect to a parent if the court finds ... failure of parental adjustment." Id. § T8A-6-507(1)(e). Failure of parental adjustment means that "a parent or parents are unable or unwilling within a reasonable time to substantially correct the cireumstances, conduct, or conditions that led to placement of their child outside of their home." Id. § 78A-6-502(2). A parent's failure to comply with the conditions of a Division service plan within six months of the plan's commencement is evidence of failure of parental adjustment. Id. § T8A-6-508(5).[11]
*1210 22 Mother argues that the juvenile court failed to appropriately weigh her efforts to comply with the Plan at the time of the trial against her previous noncompliance, as required by In re B.R., 2007 UT 82, 171 P.3d 435.[12] See id. ¶ 13. Mother also claims that the juvenile court improperly shifted the burden onto her to prove that she had obtained suitable housing and could financially support her child. See Utah Code Ann. § 78A-6-506(3) (LexisNexis 2012) ("The court shall in all cases require the petitioner to establish the facts by clear and convincing evidence. ...").
123 First, Mother argues that the juvenile court was required to weigh her past conduct with her present abilities when determining whether she had failed to adjust parentally and that, considering the totality of the evidence, the juvenile court's finding of failure of parental adjustment is against the clear weight of the evidence. "In termination cases, the juvenile court must weigh a parent's past conduct with her present abilities." In re B.R., 2007 UT 82, ¶ 13, 171 P.3d 435. However,
if a parent has demonstrated some improvement in parenting ability but not a strong likelihood that the parent can provide a proper home for the child in the very near future, after a long period of separation, a history of problems and failure to remedy, and deterioration of the relationship between the child and parent, this court should not overturn a court's order terminating parental rights.
Id. (citation and internal quotation marks omitted).
€24 Here, the juvenile court found that Mother had failed to comply substantially with the Plan, which was evidence of failure of parental adjustment. See Utah Code Ann. § 7T8A-6-508(5) (LexisNexis 2012). Specifically, the juvenile court found that Mother had failed to maintain suitable housing and stable employment and had failed to pay child support when she was employed. The juvenile court then observed that Mother was not employed at the time of trial and had only limited employment at times during the case. The juvenile court also found that Mother's living situation remained "tenuous" and dependent upon the father of her second child (Boyfriend), who was married to another woman, in the country illegally, and potentially subject to deportation. Based on Boyfriend's absence at trial, his support for Mother's return to Mexico with both K.J. and his own child, and his lack of intent to divoree his current wife in favor of a permanent relationship with Mother, the juvenile court did not find credible the testimony that Boyfriend was willing to support Mother and KJ. The juvenile court also found that in light of the Division's prior determination that Boyfriend's home was unsuitable for an overnight or trial placement with K.J., insufficient evidence was presented that Boyfriend's home could satisfy the suitable housing requirement. Based on these findings, *1211 the court determined that Mother had failed to adjust parentally.
125 We do not agree that the juvenile court failed to properly weigh Mother's past conduct with her present abilities. While the juvenile court considered Mother's failure to comply with the Plan as evidence of her failure of parental adjustment, it also considered her cireumstances at the time of the trial in making its determination regarding parental adjustment. The juvenile court's factual findings are adequate to support its determination that at the time of trial, Mother had not found stable employment or suitable housing and that her living situation with Boyfriend did not evidence stability. Considering the totality of the evidence demonstrating Mother's continued failure to comply with the requirements of the Plan, it was not against the clear weight of the evidence for the juvenile court to determine that Mother had failed to adjust parentally.
$26 Mother also argues that in considering the evidence of parental adjustment, the juvenile court improperly shifted the burden of proof to her. While the petitioner bears the ultimate burden of proving the grounds for termination by clear and convincing evidence, see id. § 78A-6-506(8), onee evidence is presented that would justify termination, the burden shifts to the parent to "persuade the court that the [petitioner] had not established [the ground for termination] by clear and convincing evidence," In re J.B., 2002 UT App 267, ¶ 22, 58 P.3d 958.
127 Mother claims that Foster Parents presented no evidence that Boyfriend's home was unsuitable or that Boyfriend was unwilling to support Mother and K.J. She argues that the juvenile court therefore improperly imposed the burden of proof on her. We disagree. As discussed above, the juvenile court concluded that Mother's failure to comply with the Plan presented evidence of failure of parental adjustment. The evidence presented at trial demonstrated that Mother had failed to obtain stable employment or suitable housing and otherwise lacked the resources to care for K.J. Given this evidence, Mother bore the burden of demonstrating that her efforts toward finding alternate means of providing for K.J., rather than those prescribed by the Plan, were adequate. See id. However, the juvenile court did not find credible the testimony at trial that Boyfriend was willing and able to support Mother and K.J. or that Boyfriend's home was suitable. See supra 124. Given the evidence supporting the juvenile court's determination, we cannot say that the juvenile court improperly placed the burden of proof on Mother.
B. The Juvenile Court's Determination that Mother's Failure to Pay Child Support Was Evidence that She Was Unfit Is Not Against the Clear Weight of the Evidence.
{28 Mother argues that the juvenile court's determination that she was unfit was against the clear weight of the evidence because it was based on a flawed understanding of Mother's obligation to provide financial support.[13] The juvenile court "may terminate all parental rights with respect to a parent if the court finds ... that the parent is unfit or incompetent." Utah Code Ann. § TRA-6-507(1){(c) (LexisNexis 2012). In evaluating whether a parent is fit, the court must consider a parent's "repeated or continuous failure to provide the child with adequate food, clothing, shelter, education, or other care necessary for the child's physical, mental, and emotional health and development by a parent or parents who are capable of providing that care." Id. § 78A-6-508(2)(d).
29 Mother argues that it was impossible for her to provide financial support for K.J. because she was illegally in the country and thus unable to work legally. She argues, alternatively, that the juvenile court failed to consider whether Mother was "financially *1212 able" or "capable" of providing support, as required by statute.
€30 First, Mother argues that the common law doctrine of impossibility exeuses her failure to pay child support as required by the Plan and that it was therefore improper for the juvenile court to conclude that her failure to provide child support for K.J. was evidence that she was unfit. This common law exception has been applied to statutes governing termination of parental rights " 'where a [parent] does not know of the need to protect [parental] rights,' such that 'there is no "reasonable opportunity" to assert or protect parental rights. " In re I.K., 2009 UT 70, ¶ 22, 220 P.3d 464 (quoting In re Adoption of Baby Boy Doe, 717 P.2d 686, 689 (Utah 1986)). Mother argues that because she cannot work legally in the country, the juvenile court ordered her to complete an impossible task, and she therefore had no reasonable opportunity to protect her parental rights.
131 We do not decide whether the impossibility exception is applicable to Mother's requirement to pay child support, because Mother challenges this requirement of the Plan for the first time on appeal. Even prior to the juvenile court's adjudication of K.J. as abused and neglected, Mother, represented by counsel, agreed in mediation to cooperate with the Division in developing a service plan as described in the State's verified petition, which included the stable income, suitable housing, and child support requirements. When the Plan was adopted, Mother agreed that she had assisted in its development and agreed to actively participate in the Plan. There is nothing in the record before this court indicating that Mother or her counsel ever objected to the employment and child support requirements of the Plan or requested that the juvenile court order the Plan to be modified to effect her compliance. Mother failed to comply with these provisions of the Plan from the time of its entry until the time of the termination trial. Under these cireumstances, Mother cannot now argue on appeal that her compliance with the Plan was impossible, because she never raised this issue before the juvenile court and therefore has not preserved this issue for appellate review.[14] " preserve an issue for appeal{,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " In re A.K., 2012 UT App 232, ¶ 22, 285 P.3d 772 (alterations in original) (quoting 438 Main St. v. Easy Heat, Inc., 2004 UT 72, ¶ 51, 99 P.3d 801); cf. Donnelly v. Donnelly, 2013 UT App 84, ¶ 16, 301 P.3d 6 (determining that a husband had failed to preserve his argument that temporary alimony award was too high for him to afford because he did not demonstrate that the issue had been argued to the trial court).
T32 Mother further argues that because she was not capable of providing child support as a result of her illegal status, the juvenile court improperly considered her failure to do so as evidence of unfitness. In evaluating whether a parent is fit, the court must consider a parent's "repeated or continuous failure to provide the child with adequate food, clothing, shelter, education, or other care necessary for the child's physical, mental, and emotional health and development by a parent or parents who are capable of providing that care." Utah Code Ann. § 78A-6-508(2)(d) (emphasis added).
133 Mother argues that because she is in the country illegally, she was unable to obtain legal employment and was therefore incapable of paying child support. However, the juvenile court found that Mother had failed to contact ORS to establish child support and that during the times when Mother was employed, she did not pay any child support. The juvenile court's determination that her failure to provide financial support for K.J. was evidence of unfitness under see *1213 tion 78A-6-508(2)(d) was specifically based on her failure to do so "[elven when [MJother was employed." Furthermore, while Mother argues that she would be able to provide financial support for K.J. by living with Boyfriend, she nevertheless failed to contact ORS to arrange or pay child support despite having lived with Boyfriend for six months at the time of trial. We thus do not agree that the juvenile court failed to consider whether Mother was capable of providing financial support for K.J., because the juvenile court's determination was based only on her failure to provide support when she was employed or otherwise capable of providing support.
134 Because the juvenile court properly considered Mother's failure to pay child support as evidence that she was unfit pursuant to Utah Code section 78A-6-508, we conclude that the juvenile court's determination that Mother was unfit under section 78A-6-507(1)(c) is not against the clear weight of the evidence.
C. The Juvenile Court's Determination that Mother Would Not Have Been Capable of Exercising Proper and Effective Parental Care in the Near Future Is Not Against the Clear Weight of the Evidence.
13835 Mother next argues that the juvenile court's determination that she would be unable to exercise proper and effective parental care in the near future is against the clear weight of the evidence. The juvenile court may terminate all parental rights with respect to a parent if the court finds
that the child is being cared for in an out-of-home placement under the supervision of the court or the division|,] ... that the parent has substantially neglected, wilfully refused, or has been unable or unwilling to remedy the cireumstances that cause the child to be in an out-of-home placement{,] ... [and] that there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care in the near future....
Utah Code Ann. § 78A-6-507(1)(d) (Lexis Nexis 2012).
136 Mother argues that the juvenile court's factual finding that no evidence was presented that Mother is capable of parenting her child is unsupported by any evidence, and therefore against the clear weight of the evidence. "To overturn a finding of fact, we require the appellant to marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding when viewing it in a light most favorable to the court below." See In re K.F., 2009 UT 4, ¶ 44, 201 P.3d 985 (citation and internal quotation marks omitted). Mother also contends that the juvenile court improperly shifted the burden to her to demonstrate that she was capable of parenting her child. See Utah Code Ann. § T8A-6-506(8) (LexisNexis 2012) ("The court shall in all cases require the petitioner to establish the facts by clear and convincing evidence. ...").
137 First, the juvenile court found that "no evidence was presented that [Mother] is capable of parenting the child." Mother misreads the juvenile court's findings as stating that "no evidence was presented on the matter of the [Mother]'s parenting ability" and argues that she is therefore not obligated to marshal the evidence in support of the juvenile court's findings. See Kimball v. Kimball, 2009 UT App 233, ¶ 20 n. 5, 217 P.3d 733 (explaining appellant's marshaling burden when no evidence supports the challenged finding). However, the juvenile court's other factual findings demonstrate that substantial evidence was presented as to Mother's parenting ability but that the juvenile court found that none of the evidence demonstrated that Mother was presently capable of parenting her child in practice, rather than in theory. Accordingly, the juvenile court found that the evidence demonstrated that Mother was not capable of successfully parenting K.J. on her own.
138 Having determined that Mother is incorrect that no evidence supported the juvenile court's factual finding, we decline to review the challenged finding further because Mother has failed to marshal the evidence in support of the challenged finding. See In re K.F., 2009 UT 4, ¶ 44, 201 P.3d 985; Wilson Supply, Inc. v. Fradan Mfg. Corp., 2002 UT 94, ¶ 22, 54 P.3d 1177 (explaining *1214 that "a scintilla of credible evidence" will overcome a "no evidence assertion" and "demonstrate that the appellant has failed to meet its marshaling burden"). In her opening brief, Mother presents only those facts favorable to her argument on this issue rather than those supporting the challenged finding. In response to Foster Parents' argument that she had failed to marshal the evidence, Mother's reply brief merely asserts that the juvenile court's finding was unsupported by any evidence and reiterates the facts favorable to her argument. This is inadequate to meet the marshaling burden necessary to challenge a factual finding when any evidence supports the finding. See id; Kimball, 2009 UT App 233, ¶ 20 n. 5, 217 P.3d 733.
$389 Mother next argues that in weighing the evidence of Mother's parental ability, the juvenile court improperly shifted the burden of proof to Mother. While the petitioner bears the ultimate burden of proving the grounds for termination by clear and convincing evidence, see Utah Code Ann. § 78A-6-506(8), onee evidence is presented that would justify termination, the burden shifts to the parent to "persuade the court that the [petitioner] had not established [the ground for termination] by clear and convine-ing evidence," In re J.B., 2002 UT App 267, ¶ 22, 53 P.3d 958.
T 40 Mother argues that juvenile court improperly placed the burden of proof on her to prove that she was capable of exercising proper and effective parental care for K.J. because Foster Parents presented no evidence that she was incapable of exercising such care. However, the juvenile court found that the evidence presented showed that Mother did not fully understand K.J.'s needs and lacked the resources to meet those needs in any case. The juvenile court concluded, based on the testimony and evidence presented at trial, that Mother would not sue-ceed at parenting on her own. Mother then had the burden to show that her parenting skills were adequate to persuade the court that the evidence did not prove that she was incapable of caring for K.J. See id. While Mother presented the testimony of her Division-assigned caseworker and peer parent to demonstrate her parenting abilities, the juvenile court found that Mother had never been able to put her parenting ability into practice due to her living situation and that her parenting ability was therefore only theoretical. Given the evidence supporting the juvenile court's determination, we cannot say that the juvenile court improperly placed the burden of proof.[15]
{41 We conclude that Mother has not demonstrated that the juvenile court's factual findings were erroneous or that the juvenile court improperly shifted the burden of proof. Therefore, we conclude that the juvenile court's determination that Mother would not be capable of exercising proper and effective parental care in the near future is not against the clear weight of the evidence.
D. The Juvenile Court's Determination that It Would Be in K.J.'s Best Interest to Be Free for Adoption by Foster Parents Is Not Against the Clear Weight of the Evidence.
142 Finally, Mother challenges the juvenile court's determination that it would be in K.J.'s best interest to terminate Mother's parental rights, freeing K.J. for adoption by Foster Parents. "[If a parent is found ... to be unfit or incompetent ... the court shall then consider the welfare and best interest of the child of paramount importance in determining whether termination of parental rights shall be ordered." Utah Code Ann. § 78A-6-506(8) (LexisNexis 2012). The only challenge raised by Mother to the juvenile court's best interest determination is that the determination was based on an incorrect belief that the Division sought to place K.J. with her maternal grandmother rather than with Mother.[16]
*1215 1 43 We disagree with Mother's characterization of the juvenile court's best interest determination. The juvenile court concluded that the Division's plan for placement of K.J. "contemplates custody to the maternal grandmother, if not in law, in fact." (Emphasis added.) The juvenile court recognized that Mother would have custody of K.J. but determined that because Mother was unable to care for K.J., she would be completely dependent upon the maternal grandmother under the Division's plan. Thus, the juvenile court's conclusion that the Division's placement plan contemplated custody to the maternal grandmother "in fact" is merely a recognition of Mother's dependence on the grandmother under the Division's placement plan. Because Mother does not otherwise challenge the sufficiency of the evidence underlying the juvenile court's best interest determination and we are not left with "a firm and definite conviction that a mistake has been made," we decline to overturn the juvenile court's best interest determination. See In re A.K., 2012 UT App 232, ¶ 14, 285 P.3d 772 (citation and internal quotation marks omitted).
CONCLUSION
{44 The juvenile court properly applied the reunification timelines provided by the Act. Mother has failed to demonstrate that the juvenile court's determinations were against the clear weight of the evidence. Grounds for termination exist, and Mother has not successfully challenged the juvenile court's best interest determination.
«[ 45 We affirm the termination of Mother's parental rights with respect to K.J.

. "We recite the facts in a light most favorable to the juvenile court findings." In re S.Y.T., 2011 UT App 407, ¶ 2 n. 1, 267 P.3d 930.

. The juvenile court terminated Father's parental rights with respect to K.J. at the same time it terminated Mother's. Father has not challenged the termination of his rights and is not a party to this appeal.

. Rule 34(e) of the Utah Rules of Juvenile Procedure provides, "A respondent may answer by admitting or denying the specific allegations of the petition, or by declining to admit or deny the allegations. Allegations not specifically denied by a respondent shall be deemed true." Utah R. Juv. P. 34(e).

. The Act has been amended since the time that K.J. was placed in the Division's custody. However, except as otherwise noted, see infra note 7, the provisions in effect at the relevant time do not differ in any way material to our analysis from the provisions now in effect, and we cite the current version of the Act as a convenience to the reader. See State v. Phillips, 2012 UT App 286, ¶ n. 1, 288 P.3d 310.

. However, a successful termination petition will immediately put an end to any ongoing reunification proceedings. See In re S.F., 2012 UT App 10, ¶ 53, 268 P.3d 831.

. The 2013 amendments to the Act eliminated this provision. See Utah Code Ann. § 78A-6-312 (LexisNexis Supp.2013).

. The juvenile court interpreted sections 78A-6-312(17) and -314(8) together to provide a maximum of fourteen months of reunification services when a child is less than thirty-six months old at the time of removal. See Utah Code Ann. § 78A-6-312(17) (LexisNexis 2012) (establishing shorter reunification timeline for child under thirty-six months of age); id. § 78A-6-314(8) (providing for a maximum of two three-month extensions to the period for reunification services upon sufficient findings). Mother's argument that time remained under section -314(13)(c) does not address this interpretation of the Act by the juvenile court. Because Mother has not challenged this aspect of the juvenile court's ruling, we do not review this interpretation of the Act by the juvenile court. See Utah R.App. P. 24(a)(9) (requiring the appellant's brief to "contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on"); Wilson v. IHC Hosps., Inc., 2012 UT 43, ¶ 25 n. 3, 289 P.3d 369 ("[The brief must go beyond providing conclusory statements and fully identify, analyze, and cite its legal arguments." (citation and internal quotation marks omitted)).

. Mother argues that the Division wanted to continue reunification services with the ultimate goal of placing K.J. with Mother, who would *1209 return to Mexico. Mother asserts that "[the only thing that stopped this plan was the petition filed by the foster parents." However, the time for reunification services had expired and the juvenile court found that Mother had failed to comply with the Plan, see Utah Code Ann. § 78A-6-314(2)(c), and that insufficient evidence was presented that she was able to safely resume immediate custody, see id. § 78A-6-314(2)(b). Thus, the juvenile court would have been unable to place K.J. in Mother's custody and would have been required to make a final determination regarding alternate permanency even in the absence of a termination petition.

. Mother asserts that the juvenile court "did not make any finding or conclusion that the abuse originally inflicted by [Mother] upon the child was evidence to support the [juvenile] court's conclusion that [Mother] is unfit." It is true that the juvenile court's termination ruling does not premise a specific factual finding that Mother was unfit on the abuse inflicted upon K.J. However, citing Utah Code section 78A-6-507(1)(b), the court concluded that [Mother], the natural mother, physically abused the child." See Utah Code Ann. § 78A-6-507(1)(b) (providing that the juvenile court may terminate parental rights if the court finds "that the parent has neglected or abused the child"). Thus, it can be reasonably inferred that the juvenile court considered Mother's abuse of K.J. as an independent ground for termination under Utah Code section 78A-6-507(1)(b).

. The dissent asserts that it was improper for the juvenile court to require Mother to obtain stable employment and suitable housing as con *1210 ditions of the Plan or to consider Mother's compliance with those requirements in determining whether she had failed to adjust parentally because the stability of Mother's income and housing is "unrelated to circumstances that led to the child's placement outside of the home." See infra 149. However, it is not the role of this court to determine what corrective measures are necessary to protect a child from further abuse and neglect. Rather, the juvenile court has the obligation and is in the best position to determine what corrective obligations should be required of a parent, and to determine whether the necessary steps have been taken to ensure a child's protection from further instances of abuse or neglect. See Utah Code Ann. § 78A-6-312(12)(a) (LexisNexis Supp.2013) ("The [juvenile] court shall ... determine and define the responsibilities of the parent under the child and family plan. ..."); In re O.C., 2005 UT App 563, ¶ 19, 127 P.3d 1286 (explaining that the juvenile court is given broad discretion in its rulings '"'based on the juvenile court judges' special training, experience and interest in this field, and devoted attention to such matters" (ellipses, citation, and internal quotation marks omitted)).These determinations are ones to which we generally defer, affording the juvenile court "a wide latitude of discretion." See In re K.F., 2009 UT 4, ¶ 18, 201 P.3d 985 (citation and internal quotation marks omitted).

. Mother's argument could also be read as an attack on the juvenile court's factual finding that Mother had failed to comply with the stable housing and income requirements of the Plan. However, because Mother does not marshal the evidence supporting this factual finding, we decline to review the juvenile court's finding. See In re K.F., 2009 UT 4, ¶ 44, 201 P.3d 985.

. Mother's argument is framed as a challenge to the juvenile court's termination of her parental rights for failure to provide financial support. However, because failure to pay financial support is not a ground for termination, see Utah Code Ann. § 78A-6-507 (LexisNexis 2012), we view Mother's argument as a challenge to the juvenile court's reliance on Mother's failure to provide financial support as evidence that she was unfit pursuant to Utah Code section 78A-6-508(2)(d).

. We note that it is unlikely Mother would prevail on this claim even if it were properly preserved. The "essential elements" of the impossibility exception are that it was (1) impossible for the parent to comply with the statutory requirement (2) "through no fault of [her] own." See In re Adoption of Baby Boy Doe, 717 P.2d 686, 690 (Utah 1986) (citation and internal quotation marks omitted). Here, Mother's failure to ever contact ORS to establish child support, as ordered by the court, appears to defeat the argument that she was faultless in her failure to provide child support for K.J.

. We agree that the juvenile court's factual findings could have been more carefully drafted to avoid the implication that the burden of persuasion was on Mother to demonstrate that she was capable of parenting her child, rather than upon Foster Parents. However, having reviewed the juvenile court's findings and conclusions as a whole, we are satisfied that the juvenile court understood and applied the correct burden of proof in this case.

. While purporting to be a challenge to termination on the grounds of failure to provide child *1215 support, Mother's argument that the juvenile court improperly considered her failure to pay child support could also be read as a challenge to the juvenile court's best interest determination on the same ground. See Utah Code Ann. § 78A-6-509(1)(b)(i) (LexisNexis 2012) (requiring the juvenile court to consider whether a parent had paid a reasonable portion of substitute physical care and maintenance in making its best interest determination regarding a child not in the physical custody of the parents). However, to the extent such an argument is raised by Mother's brief, we reject it for the reasons explained above. See supra 191 28-34.