**2018 UT App 216**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF K.J.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

J.J.,
Appellant,
AND
C.J.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
Nos. 20170812-CA and 20170814-CA
Filed November 16, 2018

Third District Juvenile Court, Salt Lake Department
The Honorable Susan H. Eisenman
No. 1131478

Sheleigh A. Harding, Attorney for Appellant J.J.

Jordan Putnam, Attorney for Appellant C.J.

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce and Natalia Peterson,
Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     This case requires us to determine whether the State may file a petition seeking termination of parental rights when the child is already subject to ongoing abuse, neglect, and

dependency proceedings.[1] We conclude that the plain language of the Juvenile Court Act (the JCA) permits the State to file a termination petition at any time. Accordingly, we affirm the juvenile court's order terminating C.J.'s (Mother) and J.J.'s (Father) parental rights in K.J. (Child).[2]

BACKGROUND

¶2      Mother and Father are the biological parents of Child. At birth, Child tested positive for benzodiazepines, oxycodone, and morphine and remained in the hospital's neonatal intensive care unit for eleven days for treatment related to opiate withdrawals.

¶3      Approximately three weeks after Child was born, he was taken into custody by law enforcement, and the Division of Child and Family Services (DCFS) filed a verified petition alleging that Child was "an abused, neglected, or dependent child." The juvenile court held a shelter hearing and placed Child in DCFS's temporary custody. At the adjudication hearing, the parents stipulated to certain factual findings, and the

---

1. Termination of parental rights proceedings are governed by Part 5 of the Juvenile Court Act (the JCA), known as the Termination of Parental Rights Act. *See* Utah Code Ann. §§ 78A-6-501 to -515 (LexisNexis Supp. 2018). Abuse, neglect, and dependency adjudications, proceed under Part 3 of the JCA, "Abuse, Neglect, and Dependency Proceedings." *See id.* §§ 78A-6-301 to -324. Where the applicable statutory provisions remain substantially unchanged or unless noted otherwise, we refer to the current version of the Utah Code for convenience.

2. The juvenile court's termination of Mother's and Father's parental rights is the subject of separate appeals. Because both parents' arguments are the same, we issue a joint opinion resolving both appeals.

juvenile court adjudicated Child as neglected by Mother and dependent as to Father. The court entered a dispositional order in September 2016, ordering DCFS to provide reunification services to Father but not to Mother who was incarcerated at the time. After Mother's release, the court ordered her to participate in a substance abuse evaluation and to follow any recommendations from that evaluation. In February 2017, the court determined that reunification services had been successful, transferred permanent custody of Child back to the parents, and terminated its jurisdiction and DCFS's involvement.

¶4 Five months later, in July 2017, DCFS filed another verified petition alleging that Child was "abused and neglected." At that time, Mother was again incarcerated. The juvenile court held a shelter hearing and placed Child in DCFS's temporary custody "for appropriate placement." The court also appointed counsel for both parents.

¶5 In August 2017, DCFS filed a verified petition seeking termination of both Father's and Mother's parental rights. The court scheduled a pretrial hearing and a trial on the termination petition. During the pretrial hearing, the parents moved "for a hearing for reunification services." DCFS opposed the parents' motion, asserting that there is no provision for reunification services when DCFS files a termination petition instead of an abuse and neglect petition. The juvenile court stated that it would consider any motions for reunification services "filed in a timely manner."

¶6 Before trial, Father filed a "Motion to Stay Termination of Rights Petition and Convert Trial Setting to Pretrial Hearing on Underlying Petition." In his motion, Father requested a stay of the termination petition and argued that DCFS was required to proceed on its abuse and neglect petition, "and only once [the juvenile court] has determined that reunification services are inappropriate should [DCFS] file a termination of rights petition." He further argued that "[t]he dispositional statute clearly contemplates that there will be a hearing to determine

whether reunification services are appropriate" and that, "[b]y moving straight to a petition to terminate parental rights, the State jumps over all of the safeguards and due process given to the family in the dispositional statute." *See generally* Utah Code Ann. § 78A-6-312 (LexisNexis Supp. 2018) (discussing dispositional hearings and reunification services).

¶7    DCFS objected to Father's motion, arguing that Father "does not have a constitutional right to reunification" and that his "due process rights will be preserved and protected during the trial" on the termination petition. DCFS further asserted that "[t]here is no provision for reunification [services] to be granted under the Termination of Parental Rights Act."

¶8    At the beginning of the termination trial, the court addressed and denied Father's motion to stay. In its written ruling, the court stated that it was not persuaded that Father's "due process rights are violated by the State pursuing alternative petitions and acting on the more final petition first." First, the court determined that "there is no recognized substantive due process right that would require the state to either dismiss . . . or proceed on a verified [abuse or neglect adjudication] petition prior to proceeding with a Petition for Termination of Parental Rights." The court recognized that parents have a "'fundamental liberty interest in the care, custody, and management of their children'" and that, notwithstanding that interest, "'a parent shown by clear and convincing evidence to be unfit can be permanently deprived of all parental rights.'" (Quoting *In re J.S.*, 2017 UT App 167, ¶ 7, 405 P.3d 828 (per curiam).) The court observed that requiring the State to forgo "alternative jurisdictional theories would dilute the State's 'moral and statutory obligation to step in and protect children when those children are suffering from neglect and abuse.'" (Quoting *id.*) Thus, the court concluded, "[t]he separate filing does not implicate [Father's] substantive due process rights."

¶9    Second, the court concluded that Father was not denied procedural due process. Specifically, the court observed that the

parties had "concede[d] that there is no constitutional or statutory right to reunification services, nor do the presumptions for or against reunification services apply to a verified petition for termination of parental rights." The court determined that there is "no right to have a petition for adjudication [of abuse or neglect] filed before a petition to terminate parental rights" and that "the State or any party has the discretion to file a termination petition whenever the parties believe there are grounds to terminate parental rights." The court observed that Father (1) had participated in all of the proceedings since Child's birth, (2) had received notice of the termination petition, (3) had been appointed counsel "at all stages of the proceeding," and (4) "had a full and fair opportunity to defend against" the termination petition. The court determined that there was "nothing 'fundamentally unfair' about proceeding with a properly filed termination proceeding while a verified petition alleging abuse and neglect remains filed and outstanding."

¶10 Ultimately, the court terminated both parents' parental rights. Regarding Mother, the court found that (1) Mother had neglected Child and was an unfit parent because she "habitually and excessively use[d] controlled substances or dangerous drugs that render[ed] her unable to care for [Child]"; (2) Child was being cared for in an out-of-home placement and Mother had "substantially neglected, willfully refused or [was] unable or unwilling to remedy the circumstances that cause[d] [Child] to be in an out-of-home placement[,] and there [was] a substantial likelihood that [she would] not be capable of exercising proper and effective parental care in the near future"; and (3) Mother had experienced a failure of parental adjustment. *See* Utah Code Ann. § 78A-6-507(1)(b), (d), (e) (LexisNexis Supp. 2018); *id.* § 78A-6-508(2)(c), (d). The court further determined that it was in Child's best interest to terminate Mother's parental rights.

¶11 Regarding Father, the court found that (1) Father had neglected Child and was an unfit parent because he "habitually and excessively use[d] controlled substances or dangerous drugs

that render[ed] him unable to care for [Child]"; (2) Child was being cared for in an out-of-home placement and Father had "substantially neglected, willfully refused or [was] unable or unwilling to remedy the circumstances that cause[d] [Child] to be in an out-of-home placement[,] and there [was] a substantial likelihood that [he would] not be capable of exercising proper and effective parental care in the near future"; and (3) Father had experienced a failure of parental adjustment. *See id.* § 78A-6-507(1)(b), (d), (e); *id.* § 78A-6-508(2)(c), (d). The court also took judicial notice "of its disposition and review orders related to [Father]" and found that "the services provided to [Father] in 2016 when [Child] was removed the first time were reasonable." The court further determined that it was in Child's best interest to terminate Father's parental rights.

¶12 The parents moved to amend the order terminating their parental rights under rule 59 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 59(a)(7) ("[A] new trial may be granted to any party on any issue for any of the following reasons: . . . that the verdict or decision is contrary to law or based on an error in law."). They asserted that the juvenile court's ruling that the State could proceed on its termination petition instead of the underlying abuse and neglect petition was contrary to this court's decision in *In re S.F.*, 2012 UT App 10, ¶ 43, 268 P.3d 831. According to the parents, *In re S.F.* stands for the proposition that, where juvenile court jurisdiction is terminated in an earlier case, the child welfare proceedings must begin anew, which requires a shelter hearing, adjudication, disposition, and a permanency hearing before the State can seek termination of parental rights. Thus, the parents asserted, the State should have been required to "proceed on its underlying verified petition of abuse and neglect prior to proceeding on its termination of rights petition."

¶13 The juvenile court denied the parents' motion. The court was not persuaded by the parents' arguments and disagreed with their reading of *In re S.F.*, concluding that the case held that

"when a child is removed after the Court's jurisdiction is terminated, the filing of a new petition is needed to reanimate the Court's jurisdiction." But the court did not read the decision "to limit *how* the Court's jurisdiction is reanimated to only custody petitions." The court determined that "it is clear that that juvenile court act procedures did begin anew in this case," explaining:

> A new petition for custody was filed to take [Child] back into protective custody. A shelter hearing was held and the parents were afforded counsel and a right to be heard. After the shelter hearing but before adjudication of the first petition, the State filed a second petition, this one requesting termination of parental rights. The case proceeded to adjudication: the termination of parental rights petition was adjudicated, and the order terminating parental rights constituted the dispositional order.

(Quotation simplified.) The court further stated that it "had jurisdiction to hear either petition and it determined to hear . . . the more determinative petition first."

¶14    Mother and Father appeal.


ISSUE AND STANDARDS OF REVIEW

¶15    Mother and Father contend that their due process rights were violated "when the juvenile court allowed DCFS to proceed on its termination of [parental] rights petition, rather than requiring DCFS to proceed on the underlying abuse/neglect petition." "Whether a parent has been afforded adequate due process is a question of law, reviewed for correctness." *In re S.F.*, 2012 UT App 10, ¶ 24, 268 P.3d 831 (quotation simplified). "Likewise, any interpretation of the Juvenile Court Act is a question of law, reviewed for correctness." *Id.*

ANALYSIS

¶16    "The right to raise one's children is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution." *In re X.C.H.*, 2017 UT App 106, ¶ 14, 400 P.3d 1154 (quotation simplified); *see also* Utah Code Ann. § 78A-6-503(1) (LexisNexis Supp. 2018) ("Under both the United States Constitution and the constitution of this state, a parent possesses a fundamental liberty interest in the care, custody, and management of the parent's child."). "Accordingly, that right may not be terminated without due process of law." *In re X.C.H.*, 2017 UT App 106, ¶ 14 (quotation simplified); *see also* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); Utah Code Ann. § 78A-6-503(2) (LexisNexis Supp. 2018) ("The court shall provide a fundamentally fair process to a parent if a party moves to terminate parental rights.").

¶17    Mother and Father contend that the State "should have been required to proceed on the underlying abuse/neglect petition" and that their due process rights were violated when the juvenile court instead allowed the State to proceed on its termination petition. Once the State filed its abuse and neglect petition, the parents contend they then "had a due process right to an adjudication of the abuse, neglect, and/or dependency petition . . . , and to a dispositional hearing [thirty] days later." They assert that "[t]he dispositional statute clearly contemplates that there will be a hearing to determine whether reunification services are appropriate, and if not, then the case proceeds to a permanency hearing, where a petition to terminate parental rights could be filed."[3] In other words, the parents contend that,

_____

3. Mother and Father concede that "a parent does not have a right to reunification services from the State of Utah." *See generally In re N.R.*, 967 P.2d 951, 955–56 (Utah Ct. App. 1998) ("Reunification services are a gratuity provided to parents by the

(continued…)

once the State filed its abuse and neglect petition, the parents were thereafter entitled to the full panoply of proceedings set forth in Part 3 of the JCA before the State was permitted to seek termination of either parent's parental rights.

¶18 "When interpreting a statute, it is axiomatic that [our] primary goal is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 11, 368 P.3d 846 (quotation simplified). As Utah courts have often noted, "the best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (quotation simplified). "Our task . . . is to determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)." *Id.* (quotation simplified). We therefore "read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Id.* (quotation simplified). Lastly, "we avoid any interpretation which renders parts or words in a statute inoperative or superfluous in order to give effect to every word of a statute." *Id.* (quotation simplified).

¶19 We see nothing in the JCA's plain language prohibiting the State from bringing a termination proceeding while an abuse, neglect, or dependency proceeding is pending in the juvenile court. We first address the statutory language, concluding that the statutes' language permits the State to file a termination petition at any time during the pendency of an abuse, neglect, or dependency proceeding. We then address the case law upon which the parents rely.

---

(…continued)
Legislature, and [parents] thus have no constitutional right to receive these services.").

A

¶20　The JCA contains multiple statutory avenues for the termination of parental rights. To begin with, Part 3 of the JCA, governing abuse, neglect, and dependency proceedings, sets out a detailed process by which the State may intervene in the parent-child relationship, work to improve that relationship and the conditions of the family, and seek to terminate a parent's parental rights if necessary. *See generally* Utah Code Ann. §§ 78A-6-301 to -324 (LexisNexis Supp. 2018). Pursuant to the JCA, a juvenile court has exclusive original jurisdiction in a proceeding concerning "a child who is an abused child, neglected child, or dependent child." *Id.* § 78A-6-103(1)(b).

¶21　Under Part 3, an abuse, neglect, or dependency proceeding generally begins when, after taking a child into protective custody, the State files a verified petition alleging that the child has been abused, neglected, or is dependent.[4] *See id.* §§ 78A-6-302, -304. The juvenile court is then required to hold a shelter hearing pursuant to section 78A-6-306 to determine whether continued removal and placement of the child in DCFS's temporary custody are necessary. *See id.* § 78A-6-306. The matter then proceeds, and the court holds an adjudication hearing. *See id.* § 78A-6-311. "If, at the adjudication hearing, the court finds, by clear and convincing evidence, that the allegations contained in the petition are true, it shall conduct a dispositional hearing." *Id.* § 78A-6-311(1). At the dispositional stage, the juvenile court has myriad dispositional choices available to it, from protective supervision, to reunification services, to termination of parental rights. *See id.* §§ 78A-6-117(2), -312(1)–(2). If the court does not order

---

4. Although "any interested person" may file an abuse, neglect, or dependency petition, for our purposes we refer only to the State. *See* Utah Code Ann. § 78A-6-304(2)(a) (LexisNexis Supp. 2018).

reunification services, a permanency hearing must be held within thirty days. *Id.* §§ 78A-6-312(26), -314(1)(b). If, at the permanency hearing, the final plan for the child is to proceed toward termination of parental rights, "the petition for termination of parental rights shall be filed, and a pretrial held, within [forty-five] calendar days after the permanency hearing." *Id.* § 78A-6-314(9).

¶22   Notably, section 78A-6-314 provides that nothing in the section pertaining to the permanency hearing and the final permanency plan "may be construed to . . . limit or prohibit the filing of a petition for termination of parental rights by any party, or a hearing on termination of parental rights, at any time prior to a permanency hearing." *Id.* § 78A-6-314(11)(c). "This provision clearly contemplates the possibility that if a termination trial is held prior to a permanency hearing and the parent's rights are terminated, then the parent may never receive a permanency hearing." *In re S.F.*, 2012 UT App 10, ¶ 53, 268 P.3d 831.

¶23   The State concedes that this process is "the norm" and that, "[i]n child welfare proceedings initiated by the State, it is more typical that the proceedings begin with a petition pursuant to Utah Code [section] 78A-6-304" seeking adjudication of abuse, neglect, or dependency. But while that process may be "the norm," we agree with the State that "it is not a legal requirement" for this process to occur before terminating parental rights. In other words, while most termination cases begin as abuse, neglect, and dependency cases, a termination proceeding does not necessarily flow from an abuse, neglect, and dependency proceeding. Nor does a termination proceeding depend upon a prior adjudication of abuse or neglect.

¶24   Pursuant to Utah Code section 78A-6-103(1)(f), juvenile courts also have exclusive original jurisdiction in proceedings concerning "the termination of the legal parent-child relationship in accordance with Part 5, Termination of Parental Rights Act, including termination of residual parental

rights and duties." Utah Code Ann. § 78A-6-103(1)(f) (LexisNexis Supp. 2018).[5] Section 78A-6-504 provides that "[a]ny interested party . . . may file a petition for termination of the parent-child relationship with regard to a child." *Id.* 78A-6-504(1). "When termination proceedings are initiated under [the Termination of Parental Rights Act], the [juvenile] court must make two distinct findings supported by clear and convincing evidence before a person's parental rights can be properly terminated." *In re Adoption of T.H.*, 2007 UT App 341, ¶ 11, 171 P.3d 480. "First, the court must find that the parent is below some minimum threshold of fitness, such as finding that a parent is unfit or incompetent based on any of the grounds for termination under section 78A-6-507 of the Utah Code." *In re X.C.H.*, 2017 UT App 106, ¶ 34, 400 P.3d 1154 (quotation simplified); *see also* Utah Code Ann. § 78A-6-507(1) (LexisNexis Supp. 2018) (listing the grounds for termination of parental rights and providing that the finding of a single enumerated ground will support the termination of parental rights). Second, after finding at least one of the enumerated grounds, "the court must find that the best interests and welfare of the child are served by terminating the parents' parental rights." *In re X.C.H.*, 2017 UT App 106, ¶ 34 (quotation simplified); *see also* Utah Code Ann. § 78A-6-506(3) (LexisNexis Supp. 2018).

¶25 Mother and Father do not challenge the constitutionality or statutory procedures set forth under either Part 3 or Part 5 of the JCA independently. Rather, they assert that due process

---

5. While juvenile courts have exclusive original jurisdiction to consider the termination of the parental rights of parents who are deemed unfit, pursuant to Utah Code section 78B-6-112, a district court has jurisdiction "to terminate parental rights in a child if the party who filed the petition is seeking to terminate parental rights in the child for the purpose of facilitating the adoption of the child." Utah Code Ann. § 78B-6-112(1) (LexisNexis Supp. 2018).

prohibits the State from jumping to a termination proceeding under Part 5, while an adjudication of abuse, neglect, or dependency is proceeding under Part 3. Such a change in course, the parents argue, deprives them of "the safeguards and due process" provided in the adjudication statute. We are not persuaded. The statutes do not prohibit the State from changing course and, as we discuss later, *infra* ¶¶ 39–42, such a turn does not violate the parents' due process rights. The plain language of the applicable statutes simply does not prohibit the State from filing a petition seeking termination of parental rights while an abuse, neglect, or dependency proceeding is pending in the juvenile court. Indeed, as previously discussed, section 78A-6-314 provides that nothing in the section relating to the permanency hearing and the final permanency plan "may be construed to . . . limit or prohibit the filing of a petition for termination of parental rights by any party, or a hearing on termination of parental rights, *at any time prior to a permanency hearing*." Utah Code Ann. § 78A-6-314(11)(c) (LexisNexis Supp. 2018) (emphasis added). Rather, we agree with the State that the plain language of the JCA "allows for a termination petition to be filed at any time [during an abuse, neglect, or dependency proceeding], or even as a stand-alone action."

¶26    Moreover, the JCA provides that juvenile courts have exclusive original jurisdiction over "a child who is an abused child, neglected child, or dependent child," as well as "the termination of the legal parent-child relationship in accordance with Part 5, Termination of Parental Rights Act, including termination of residual parental rights and duties." Utah Code Ann. § 78A-6-103(1)(b), (1)(f). Here, DCFS filed a verified petition alleging that Child was "abused and neglected." The juvenile court held a shelter hearing and placed Child in DCFS's temporary custody "for appropriate placement." Before adjudication on the first petition, DCFS filed a second verified petition seeking termination of both Mother's and Father's parental rights. The juvenile court had exclusive original jurisdiction over both petitions, and we agree with the juvenile

court that the State may elect to proceed with the more final petition first. Indeed, as the juvenile court observed, "[t]o require the State to [forgo] alternative jurisdictional theories would dilute the State's 'moral and statutory obligation to step in and protect children when those children are suffering from neglect and abuse.'" (Quoting *In re J.S.*, 2017 UT App 167, ¶ 7, 405 P.3d 828 (per curiam).)

¶27 In sum, where an abuse, neglect, or dependency proceeding is pending, nothing in the plain language of the JCA prohibits the State from reasserting jurisdiction by filing another petition seeking termination of parental rights.

B

¶28 Mother and Father direct our attention to *In re S.F.*, 2012 UT App 10, 268 P.3d 831, for the proposition that the State must go through all of the statutory child welfare proceedings under Part 3, once initiated, before proceeding to termination under Part 5. The parents' reliance on *In re S.F.* is misplaced.

¶29 There, the father's children were first placed in DCFS's protective custody in August 2007, and the juvenile court later adjudicated the children as neglected. *Id.* ¶ 2. After twelve months of reunification services, the juvenile court found that the father had substantially complied with the treatment plan, and the court returned custody and guardianship of the children to the father "subject to protective supervision by DCFS." *Id.* ¶¶ 3–4 (quotation simplified). The court also ordered DCFS to create a new service plan for the father and scheduled a review hearing for a few months later. *Id.* ¶ 4. Shortly after the father entered into the new service plan, police responded to two separate domestic violence incidents at his home, and in November 2008, DCFS filed a petition seeking to have the children removed from the father's custody. *Id.* ¶ 5. The juvenile court placed the children in DCFS's temporary custody, having determined that removal was necessary and in the children's best interests. *Id.* ¶ 7. At the next pretrial hearing, the State filed

a petition to terminate the father's parental rights, *id.* ¶ 9, and at a subsequent hearing, the court denied further reunification services to the father, *see id.* ¶¶ 10, 13–14. The case proceeded to a termination trial, and the court ultimately terminated the father's parental rights. *Id.* ¶ 16.

¶30 On appeal, the father asserted that the juvenile court failed "to hold statutorily-mandated child welfare proceedings" after his children were removed for the second time and that the juvenile court therefore exceeded its "jurisdiction and violated his due process rights." *See id.* ¶ 24. More specifically, he argued that when his children were returned to DCFS's custody in November 2008, the juvenile court was required "to adjudicate the [c]hildren again in order to obtain jurisdiction over the [c]hildren." *Id.*

¶31 This court first determined that, although the juvenile court had returned legal custody of the children to the father in August 2008, the court had retained its dispositional authority over the children as evidenced by the court's order, which anticipated continued protective supervision by DCFS and required the father to enter into a new service plan. *Id.* ¶¶ 33, 35. We determined that "as long as the juvenile court does not dismiss the case or terminate jurisdiction, the court retains dispositional authority over the [c]hildren because there has been an initial legal determination that those [c]hildren are abused, neglected, or dependent." *Id.* ¶ 34. "In contrast, where the juvenile court makes a ruling incompatible with a continuation of its authority, the court's jurisdiction ends." *Id.* Because the juvenile court "did not affirmatively renounce its jurisdiction or enter any ruling incompatible with its continuing authority," the juvenile court retained jurisdiction over the children. *See id.* ¶¶ 35–36.

¶32 Regarding the father's argument that the juvenile court was required to adjudicate the children as neglected again, this court concluded that the juvenile court was not required to restart the child welfare proceedings in November 2008. *Id.* ¶ 39.

Observing that "the juvenile court did not amend the children's status as neglected [or] surrender its jurisdiction over the family" in August 2008 when it restored legal custody to the father, we determined that the court retained dispositional authority over the children and could therefore return the children to DCFS's custody in November 2008. *Id.* ¶¶ 41, 44. As a result, the court was not required to restart the child welfare proceedings after the children's second removal. That is, the court was not required to hold a shelter hearing or readjudicate the children as neglected. *See id.* ¶ 48.

¶33    Relevant to this appeal, this court also observed, in dicta, that under a different set of circumstances—for example, if the father "had abided by the service plan until the court had terminated child supervision services and its jurisdiction, and only *then* had engaged in domestic violence in front of the [c]hildren"—"the situation would be entirely different." *Id.* ¶ 43. We stated that "[i]n such a case, where the court has terminated its jurisdiction, the Juvenile Court Act procedures would *begin anew.*" *Id.* (emphasis added). We then set forth a hypothetical sequence of events that would occur in the new proceedings:

> After taking the [c]hildren into protective custody, the State would file a petition introducing new allegations of neglect pursuant to Utah Code section 78A-6-304(1)(b). The court would then hold a shelter hearing pursuant to section 78A-6-306, the result of which might be to remove the children and place them in DCFS's temporary legal custody. After that, the matter would proceed to adjudication.

*See id.* (quotation simplified).

¶34    The parents assert that *In re S.F.* demonstrates that "where new grounds for removal occur after termination of jurisdiction" in a previous case, the juvenile court is required to "restart the child welfare proceedings." Relying on the sequence of events

described in *In re S.F.*, the parents assert that they were entitled to "an adjudication of the abuse, neglect, and/or dependency petition . . . , and to a dispositional hearing 30 days later," at which hearing the juvenile court could have determined whether reunification services were appropriate. *See id.* ¶ 43. We are not persuaded.

¶35    In *In re S.F.*, this court was concerned with the juvenile court's jurisdiction over the children, not with setting forth a mandatory sequence of events that must occur in all child welfare proceedings before a party can seek termination of parental rights. Specifically, we observed that "where the court has terminated its jurisdiction, the Juvenile Court Act procedures would begin anew," which would involve the filing of a new petition. *See id.* But as the juvenile court in this case correctly observed, *In re S.F.* does not "limit *how* the [c]ourt's jurisdiction is reanimated." The juvenile court's jurisdiction may be reanimated with a petition alleging abuse, neglect, or dependency, or with a petition seeking termination of parental rights. Our legislature has given juvenile courts exclusive original jurisdiction over both types of proceedings. *See* Utah Code Ann. § 78A-6-103(1)(b), (1)(f) (LexisNexis Supp. 2018). Here, the juvenile court had jurisdiction over both the State's abuse and neglect petition and its termination petition. Thus, as previously discussed, the only issue was deciding on which petition to proceed, and the State opted to proceed on the termination petition. As such, the statutory procedures relating to abuse, neglect, and dependency proceedings in Part 3 of the JCA had no bearing on the termination proceedings.

¶36    Our conclusion is supported by this court's decision in *In re A.K.*, 2012 UT App 232, 285 P.3d 772. In that case, the daughter had been removed from her mother's custody twice. *Id.* ¶¶ 3–4. Both times, the daughter was returned to the mother's custody with protective supervision services. *Id.* ¶¶ 3, 5. DCFS later filed a joint petition for custody and termination of the mother's parental rights. *Id.* ¶¶ 6–7. The juvenile court ordered removal of

both the daughter and mother's infant son (daughter's third removal and son's first removal), granted custody to DCFS, and set a discovery schedule for the termination hearing. *Id.* ¶ 7. The court ultimately terminated the mother's parental rights. *Id.* ¶ 10.

¶37    On appeal, the mother asserted that "certain statutory procedures were not followed after the final removal of her children" and that the juvenile court therefore lacked "jurisdiction to hear the State's petition to terminate her parental rights." *Id.* ¶ 11. More specifically, she asserted that the juvenile court "failed to hold a shelter hearing, an adjudication, and a dispositional hearing," and that the juvenile court was "deprived of jurisdiction by its failure to strictly comply with the statutory procedures for the abuse, neglect, and dependency proceedings." *Id.* ¶¶ 15–16.

¶38    This court disagreed, observing that juvenile courts have jurisdiction over proceedings concerning "'a child who is an abused child, neglected child, or dependent child,'" *id.* ¶ 16 (quoting Utah Code Ann. § 78A-6-103(1)(c) (Supp. 2012)), and that juvenile courts also have a separate statutory basis for jurisdiction in proceedings concerning "'the termination of the legal parent-child relationship in accordance with Part 5, Termination of Parental Rights Act,'" *id.* ¶ 17 (quoting Utah Code Ann. § 78A-6-103(1)(g) (Supp. 2012)). Consequently, this court concluded that, "[e]ven if the alleged defects deprived the court of jurisdiction over abuse, neglect, and dependency proceedings," the juvenile court "clearly had jurisdiction over the termination proceedings . . . pursuant to subsection (1)(g)." *Id.* In other words, any jurisdictional defects in the underlying adjudication were remedied by the termination proceeding, which provided the juvenile court with an independent grant of jurisdiction.[6] *See id.* Here, the State initially filed an abuse,

_____

6. The mother in *In re A.K.* also asserted that the alleged procedural defects violated her due process rights. *In re A.K.*,

(continued…)

neglect, or dependency petition. Switching course, the State filed a separate petition seeking termination of Mother's and Father's parental rights. The State's new petition under Part 5 of the JCA called upon a separate grant of jurisdiction given to the juvenile court. Consequently, the State's abandonment of the Part 3 neglect adjudication proceedings did not impact its ability to proceed to termination of parental rights pursuant to a Part 5 petition. *See id.*

¶39　Mother and Father do not challenge the statutory procedures set forth under either Part 3 (abuse, neglect, or dependency adjudication) or Part 5 (termination of parental rights) independently. Rather, they assert that due process requires the State to follow through with the dispositional portion of Part 3, once that adjudication process is initiated, before changing course and commencing termination proceedings under Part 5. We have already concluded that the statutes do not prohibit the State from altering course in this way, *supra* ¶ 25, and we are not persuaded that the State doing so in this case infringed on the parents' due process rights.

¶40　"Parties to a judicial proceeding are entitled to notice that a particular issue is being considered by a court and must be given an opportunity to present evidence and argument on that issue before decision." *In re M.J.*, 2011 UT App 398, ¶ 51, 266 P.3d 850 (quotation simplified). "Parties are deprived of due process when they are not properly informed of the nature of a proceeding, or notice is not given sufficiently in advance to

---

(…continued)
2012 UT App 232, ¶¶ 12, 18, 285 P.3d 772. However, she failed to "adequately demonstrate[] what the alleged procedural deficiency was or how, under the facts of [the] case, any alleged deficiency violated her due process rights." *Id.* ¶ 20. Consequently, she failed to carry her burden of persuasion on her due process claim. *Id.* ¶ 36.

allow preparation." *In re A.H.*, 2004 UT App 39, ¶ 11, 86 P.3d 745. "Judicial and administrative proceedings following the State's removal of children from their home are no exception to this fundamental principle." *Id.* ¶ 12.

¶41 Here, once the State filed its termination petition, the juvenile court scheduled a pretrial hearing on the petition and set a date for the termination trial. *See supra* ¶ 5. Both parents had proper notice of both hearings and an opportunity to argue their positions at both hearings. *See supra* ¶¶ 5–8. In addition, each parent was assisted by legal counsel throughout the termination proceedings. *See supra* ¶ 4. The fact that the parents were ultimately unsuccessful in their arguments does not mean that they did not receive the due process to which they were entitled.

¶42 As a general consideration, we note that the State's decision regarding which cases should proceed through the statutory abuse, neglect, and dependency proceedings and which cases should proceed directly, or more swiftly, to termination proceedings does seem somewhat arbitrary. But the State's decisions in that regard fall squarely within its use of executive discretion. "It is not a function of the courts to review the exercise of executive discretion," *see State v. Garcia*, 504 P.2d 1015, 1015–16 (Utah 1972), and given the plain language of our current statutory scheme, we cannot conclude that it was a violation of due process for the State and DCFS to deviate from the usual sequence of events in abuse, neglect, and dependency proceedings and to proceed on the termination petition instead.

¶43 The Guardian ad Litem is correct that what the parents seek in this case is "a legislative remedy, not a judicial one." "The policy of the law in this instance has been set by the legislature, as is its responsibility." *See In re S.L.*, 1999 UT App 390, ¶ 56, 995 P.2d 17 (Wilkins, J., concurring). That policy allows the State to determine how to proceed in child welfare proceedings. If this is not what the legislature intended, then it should consider amending the relevant portions of the JCA to

limit the circumstances under which the State may abandon pending abuse, neglect, and dependency proceedings in favor of termination proceedings.[7]

### CONCLUSION

¶44 We conclude that the State was not required to see its abuse, neglect, and dependency petition through to its end before the State could file and proceed on a separate termination petition. Both parents had notice of, and a meaningful opportunity to participate in, the termination proceedings, and we therefore conclude that they each received the due process to which they were entitled. Accordingly, we affirm the juvenile court's termination of Mother's and Father's parental rights.

───────────

7. Regarding the juvenile court's grounds for termination of the parents' parental rights, Mother and Father both assert that their "only argument . . . in response to each of the grounds for termination of parental rights [is] that [they were] not afforded an opportunity to correct these problems by the juvenile court in violation of due process." They concede that "the due process argument is key to the entirety of [their] appeal[]." Because we have concluded that Mother's and Father's due process rights were not violated, we need not address the court's grounds for termination.